Joseph Blaine STARVAGGI, Appellant,

v.

The STATE of Texas, Appellee.

No. 61206.

Court of Criminal Appeals of Texas, En Banc.

June 6, 1979.

Rehearing En Banc Denied Sept. 19, 1979.

Dennis D. Watson and J. Robert Liles, Conroe, for appellant.

James H. Keeshan, Dist. Atty., Michael A. McDougal, Asst. Dist. Atty., Conroe, and Robert Huttash, State's Atty., Austin, for the State.

Before the court en banc.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction of capital murder. The jury having answered the three special issues affirmatively, the punishment of death was assessed. V.T. C.A., Penal Code, Sections 19.03(a)(2), 12.31; Article 37.071(b)(1–3), V.A.C.C.P.

■ The sufficiency of the evidence to sustain the jury's verdict of guilt is not challenged, but in light of appellant's challenge to the sufficiency of the evidence to sustain the jury's affirmative answer to the second special issue (Article 37.071(b)(2), supra), the evidence of the crime will be reviewed. All evidence will be reviewed in a light most favorable to the jury's affirmative verdict on the second special issue. *Warren v. State*, Tex.Cr.App., 562 S.W.2d 474; *Granviel v. State*, Tex.Cr.App., 552 S.W.2d 107.

Pursuant to a prearranged plan, appellant, while armed,[1] and three others proceeded from Houston to the victim's home in Montgomery County for the purpose of burglarizing the house and stealing a collection of firearms reportedly kept there. Appellant and two others forcibly entered the deceased's home when the deceased surprised them by opening his door as they were attempting a surreptitious entry into what they expected to be an empty home. A struggle ensued, involving appellant briefly before he pursued the deceased's wife upstairs and into her bedroom. Appellant confronted her with a pistol as she was removing a .38 caliber pistol from under the mattress of her bed. She complied with appellant's command to drop the weapon and lie down with her 13-year-old daughter. Upon returning to the scene of the ongoing struggle between the deceased and one of his co-conspirators, appellant discovered the deceased had the companion's weapon pointed at the companion. The companion told appellant to shoot the deceased and appellant obliged, although under no compulsion to do so. Upon realizing what he had done, appellant "went ahead and killed him to keep him from suffering." Then appellant apologized to the deceased's wife and daughter, declined his companion's invitation to kill them, took ammunition from the deceased's gun cabinet and departed.[2]

The deceased's wife testified that after the doorbell rang and as her husband tried to prevent the entry of two intruders, she was going up the nearby stairs and observed the first intruder to be armed. As she was removing her husband's .38 caliber pistol from under the mattress of their bed, the appellant confronted her with a drawn weapon and commanded her to drop the weapon and lie down with her daughter. Appellant took the .38 caliber pistol and covered the two with a blanket. He went downstairs and a shot was fired. Appellant

---

1. Much ado is made over whether appellant was armed ab initio in an effort to fit this case within the teaching of *Warren v. State*, supra. In *Warren* the defendant was unarmed when he burgled the deceased's residence, took a pistol he discovered there, and shot the deceased when he was discovered and threatened with death by the armed deceased. Here, there is no affirmative testimony that appellant arrived armed with the pistol he confronted the deceased's wife with. However, his confession states that only two seconds elapsed between his entry and his pursuit of the wife, "right behind her," as she ran upstairs. Further, it was only after he killed the deceased that he took items from the deceased's gun cabinet. The deceased's wife testified that the first man through the door had a pistol; appellant admitted in his confession that he was turning the doorknob as the door was opened by deceased. The evidence leaves two equally inculpatory inferences: (1) appellant himself was armed at the outset, (2) appellant overtly aided armed comrades in effecting this fatal course of events. Either inference removes this case from the ambit of *Warren*, supra.

2. The foregoing rendition was derived principally from appellant's confession.

returned to the two, ordered them downstairs and repeatedly demanded money, guns, and valuables as he placed what she believed to be a gun against her covered head. She directed him to the items. When one of the perpetrators stood on her feet and invited appellant to kill them, appellant responded he only killed dopers and pigs.[3] After coming downstairs, she heard her husband's voice from the kitchen area until two more shots rang out silencing him for eternity. Appellant later told her he killed her "old man," that he was a "good old man" and that her husband made him do it. As the entourage was leaving, appellant told her to stay for 30 minutes or they would return and kill her. After they left, the deceased's wife and daughter changed clothes and ran to their neighbors in terror. The wife identified State's Exhibit 8 as the .38 caliber pistol taken from her by appellant in the master bedroom.

The deceased's daughter basically corroborated the testimony of her mother. In addition, prior to the final two shots she heard her father say: "I beg of you. Don't do this."

The Montgomery County pathologist who conducted the autopsy on the deceased related that there were three bullet wounds, two of the bullets being recovered within the body. Those two bullets, State's Exhibits 33 and 34, caused death by piercing the lungs and upper portion of the deceased's heart, including the aorta. The other bullet wound entered from the rear, above the collarbone, traveled down and exited the body without entering the chest cavity or damaging vital organs. This wound could not have caused death and would have permitted decedent to move and talk. A bullet, State's Exhibit 19, was recovered at the scene when it rolled out from under deceased's shirt.

The Houston Police Department firearms examiner testified that State's Exhibits 19, 33, and 34, the bullets recovered in or on deceased's body, were all fired from the same weapon, State's Exhibit 8, the .38 caliber pistol deceased's wife tried to retrieve from under her mattress and use in her defense.

■ At the punishment stage of the trial the State established through one police officer that appellant had a bad reputation for being a peaceable and law abiding citizen and through other witnesses that he was convicted of misdemeanor possession of marihuana and burglary. He was on five years' probation for the burglary when he committed the instant offense. Through the appellant's expert witness, a psychiatrist, it was disclosed that appellant had a long history of property related crimes and was given a bad conduct discharge from the service following a court-martial.

The appellant's claim is that the foregoing evidence is insufficient to establish, beyond a reasonable doubt, that "there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society." We disagree. Appellant's first ground of error is overruled.

■ Appellant next complains of the trial court's failure to grant a mistrial when it was shown that several jurors spoke with State witnesses after the jury was impaneled. Article 36.22, V.A.C.C.P., provides, in pertinent part:

. . . No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court.

Appellant's trial counsel observed jurors conversing with two State witnesses, both law enforcement officers, during a recess in the trial. The attorneys moved for a mistrial and testified as to their observations. The bailiff was also called by the defense, but testified he did not observe any such conversation.

The State called the two officers involved. Texas Ranger Stiles related that two or three men approached him and be-

---

3. The evidence showed the deceased was a reserve deputy sheriff and part-time probation officer.

gan discussing the unusual weather for the area (snow and ice) and the qualifications and pay for a Texas Ranger. Stiles testified that he merely answered their questions and did not know they were jurors until they responded to the call of the bailiff. Deputy Sheriff Simpson testified that he discussed how to build a fireplace and blue jean suits with two men who he did not know were jurors until called by the bailiff.

Appellant claims discussion by Ranger Stiles of ranger qualifications improperly enhanced his credibility as a witness for the State. Similar evidence was admitted through the testimony of Ranger Prince before the jury, however.

■ The law requires appellant to establish that the contents of any conversations between a non-sequestered juror and another concerned the case at trial and operated to prejudice his rights. *Johnson v. State*, Tex.Cr.App., 469 S.W.2d 581; *Maldonado v. State*, Tex.Cr.App., 507 S.W.2d 206; *Stein v. State*, Tex.Cr.App., 514 S.W.2d 927; *Wilkes v. State*, Tex.Cr.App., 566 S.W.2d 299. Having failed to shoulder his burden of proof, appellant was not entitled to a mistrial. The second ground of error is overruled.

■ Appellant's third ground of error challenges the trial court's refusal of his specially requested instruction for the punishment charge to-wit:

> You are further instructed that when the admissions or confessions of a party are introduced into evidence by the State, then the whole of the admissions or confessions are to be taken together and the state is bound by them unless they are shown to be untrue by the evidence; such admissions or confessions are to be taken into consideration by the jury as evidence in connection with other facts and circumstances of the case.

Appellant relies on *Otts v. State*, 135 Tex. Cr.R. 28, 116 S.W.2d 1084; *Jones v. State*, 29 Tex.App. 20, 13 S.W. 990; and *Wooley v. State*, 162 Tex.Cr.R. 378, 285 S.W.2d 218, for the general proposition that the State is

bound by the exculpatory statements contained in a confession as admitted by the State, unless the State disproves same. The viability of this doctrine is under reconsideration by this Court. See *Palafox v. State* (No. 53,611, decided January 24, 1979, rehearing granted April 4, 1979). Regardless, the doctrine does not apply here.

■ Appellant claims the following excerpts from his confession, *when considered in conjunction with* expert medical testimony adduced at the trial, are exculpatory in the sense that they establish mitigation as set forth in V.T.C.A., Penal Code, Section 8.04(b):

> We were all pretty loaded that night when we left. . . . Instinctivly [*sic*] we pushed ourselves in the door instead of just turning away. I guess because we had been drinking & did a couple of "quays" or pain pills.

First, the excerpts from the *confession* do not establish that as a result of appellant's claimed intoxication he "did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law" of capital murder. V.T.C.A., Penal Code, Section 8.01(a). In fact, he admits that *after realizing* what he had done (delivered a nonfatal shot to the deceased) he proceeded to kill him. *Mosley v. State*, 172 Tex.Cr.R. 117, 354 S.W.2d 391; *Carpenter v. State*, 169 Tex.Cr.R. 283, 333 S.W.2d 391; *Stephen v. State*, 163 Tex.Cr.R. 505, 293 S.W.2d 789.

■ Second, appellant seeks to rely on testimony extraneous to the confession to establish his proposition rather than rely exclusively on the contents of the confession. *Marion v. State*, Tex.Cr.App., 387 S.W.2d 56; *Carpenter v. State*, supra. In this regard, the cautious trial court granted appellant's specially requested instruction on the substance of temporary insanity based on intoxication. Section 8.04(b), supra. As a whole, the trial court's charge adequately protected appellant's rights. *Perryman v. State*, Tex.Cr.App., 507 S.W.2d 541; Article 36.19, V.A.C.C.P.

■ Third, the extraneous testimony appellant seeks to incorporate is merely theoretical and does not sufficiently tie into the excerpts from the confession. The confession relates that "quays" or pain killers were taken. The doctors testified to the synergistic effect of quayluden, a "stimulatory-type" drug, and alcohol and that such drugs could, in combination, affect an individual's judgment. There was no evidence relating to the dosage or quantity of the drugs ingested by appellant or his individual tolerance level.

In sum, appellant's contention is without merit and is overruled.

■ Challenge is lodged against the following argument made by the district attorney at the close of his opening argument at the conclusion of the punishment phase.

I just say this, that I hope he doesn't come knocking on one of your doors at eight o'clock in the evening—

Appellant's objection was overruled as was his motion for mistrial. Appellant contends the argument is not within any proper category discussed in *Alejandro v. State*, Tex. Cr.App., 493 S.W.2d 230, while the State considers it a proper plea for law enforcement. We agree with the State and further consider the statement to be a reasonable deduction from the evidence. *Nichols v. State*, Tex.Cr.App., 504 S.W.2d 462; *Parks v. State*, Tex.Cr.App., 400 S.W.2d 769. Further, it is inconceivable that such a brief and unenhanced remark had any effect on the jury's affirmative verdict on the three special issues. *Spaulding v. State*, Tex.Cr. App., 505 S.W.2d 919; *Thompson v. State*, Tex.Cr.App., 480 S.W.2d 624. The fourth ground of error is overruled.

■ Finally, appellant contends that certain "have you heard" questions propounded to his character witness at the punishment stage were asked in bad faith. He contends that the testimony of the district attorney shows he had no reasonable basis to believe that the offense inquired of was generally known in the community of the witness or appellant.

■ The character witness related that appellant's reputation for being a nonviolent person was good. Upon asking whether the witness had heard of appellant's burglarizing and robbing a fireman in Harris County, an objection was raised and a hearing conducted. The district attorney testified he knew of the offense from conversations with the victim, an accomplice of appellant in the instant case, investigating Houston police officers, and from reading the offense report. Thus, the record shows the prosecutor had a basis in fact for asking whether the witness had heard of the appellant's involvement in the offense. The prosecutor need not know that the offense and appellant's involvement are common matters of gossip or discussion in the community. The record does not support appellant's contention that reports of appellant's involvement were not and could not be circulating. Besides, such is not the relevant standard for good faith. The question is whether the prosecutor had a "good faith belief that the act actually occurred." *Brown v. State*, Tex.Cr.App., 477 S.W.2d 617, 620; *Hart v. State*, Tex.Cr.App., 447 S.W.2d 944; *Stewart v. State*, 148 Tex.Cr.R. 480, 188 S.W.2d 167. An arrest and conviction are not absolutely necessary in order to establish "good faith belief that the act actually occurred." *Brown v. State*, supra, 477 S.W.2d at 620. Appellant's fifth ground of error is overruled.

There being no reversible error, the judgment is affirmed.