**Raul Medina ESPARZA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–84–00510–CR.**

Court of Appeals of Texas,
San Antonio.

Oct. 16, 1985.

George Scharmen, San Antonio, for appellant.

Sam Millsap, Jr., Edwin Springer, Edward F. Shaughnessy, III, Crim. Dist. Attys., San Antonio, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a conviction for aggravated sexual assault. TEX.PENAL CODE ANN. § 22.021 (Vernon Supp.1985). The jury found appellant guilty and sentenced him to 99 years' confinement.

Appellant asserts two grounds of error. In his first ground, he complains the trial court erred in admitting evidence of an extraneous offense. We note here that was not his objection at trial. The record shows that early on the morning of November 26, 1983, an attacker raped complainant at knife-point after taking her from a bus stop. Complainant went to work and told her supervisor, Mike Azzoz, that she had been raped. Azzoz then called the police and a report was filed.

Within a few days, complainant received a telephone call at work from a man identifying himself as her assaulter. He said he wanted to see her under better circumstances. Mr. Azzoz listened to this conversation and reported it to the police. Appellant subsequently went to complainant's workplace several times and asked to speak with her. On one of these occasions, according to Azzoz, the following exchange took place:

Q: What did [appellant] say?

A: He just says—I guess I made him mad. He looked at me and said that 'I'll waste you.'

At that point defense counsel objected that the testimony was *extraneous and irrelevant.* We note the objection is a general one which preserves nothing for review. *See McWherter v. State,* 607 S.W.2d 531, 535 (Tex.Crim.App.1980). His objection was overruled. On re-direct examination, Azzoz again testified to appellant's threat:

Q: Do you know why [appellant] threatened to kill you?

A: I have no idea.

Defense counsel objected and was again overruled.

On cross-examination, appellant testified to the same evidence:

Q: Why did you tell Mike Azzoz that you would waste him?

A: Sir, I was a little bit—let me explain, sir. I was a little upset because he was laughing at me practically because I was trying to get in touch with Martha ... it was going to be two days already, and the way he looked at me like 'Who are you, you know, to come inside my store?' ... he was being kind of a smart aleck towards me. I said 'If I wanted to, I could waste you.'

Appellant went on to explain that he simply meant that he would fight Azzoz; he was not threatening to kill him.

■ Although the record reflects the evidence of threats made by appellant was admitted over objection, the alleged error, if any was preserved, was cured when appellant testified to substantially the same evidence on cross-examination. *Woolls v. State*, 665 S.W.2d 455, 470 (Tex.Crim.App. 1983); *Crocker v. State*, 573 S.W.2d 190, 201 (Tex.Crim.App.1978); *Kime v. State*, 500 S.W.2d 138, 139 (Tex.Crim.App.1973). Ground of error one is overruled.

In his second ground of error, appellant complains of the trial court's failure to grant a mistrial when it was shown that several jurors spoke with a State's witness while the judge and counsel were in chambers.

TEX.CODE CRIM.PROC.ANN. art. 36.-22 (Vernon 1981) provides, in pertinent part:

... No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court.

■ It is generally presumed that a defendant is injured whenever an impaneled juror converses with an unauthorized person. *Chambliss v. State*, 647 S.W.2d 257, 265–66 (Tex.Crim.App.1983); *Romo v. State*, 631 S.W.2d 504, 506 (Tex.Crim.App. 1982); *Martinez v. State*, 656 S.W.2d 103, 106 (Tex.App.—San Antonio 1983, pet. ref'd). However, that presumption is rebuttable. Further, a defendant has the burden of establishing that the conversation concerned the specific case at trial. *Chambliss v. State, supra,* at 266; *Romo v. State, supra,* at 506; *Starvaggi v. State*, 593 S.W.2d 323 (Tex.Crim.App.1979), *cert. denied*, 448 U.S. 907, 100 S.Ct. 3050, 65 L.Ed.2d 1137, *rehearing denied*, 448 U.S. 918, 101 S.Ct. 40, 65 L.Ed.2d 1181; *Martinez v. State, supra,* at 106.

The record reflects the witness, Officer Ponce Fuentes, who remained seated in the courtroom with the jurors while a hearing was conducted in the court's chambers, made comments regarding a traffic ticket being given at that time outside the courthouse. There is conflicting testimony whether he made comments regarding guilt in the specific case at trial. Debra Lynn Camara, the seventeen-year-old daughter of defense counsel, was a spectator at the trial:

I'm not sure exactly how he said it, something about—one of the ladies on the jury said she was tired and bored and the police officer said that if he was one of them, that he would just—you know, if he was in this type of case, he would just go on and say he was guilty so he could get out real quick.

On cross-examination the seventeen-year-old witness said the officer's remarks were "something to that effect." When asked if it could appear to somebody else that the officer was talking about the man getting a ticket downstairs, the witness replied, "It might, yes."

Officer Fuentes admitted speaking to the jury, but stated that his comments concerned only the traffic ticket being issued outside and how to avoid being selected for jury duty. He told the jury his parents do not get selected for jury duty because their sons are police officers.

The conversation went on that, 'I guess if a person ... didn't want to be here on the jury, but even though they were selected for jury duty, I guess if he walked in saying 'guilty' ... it would be one way of getting out of being on a jury.'

The officer went on to state that he was not stating nor implying the jury should find defendant guilty.

Evidence on the motion for mistrial was heard by the court; two witnesses, the seventeen-year-old and a child, testified while the jury deliberated guilt or innocence. The officer testified while the jury deliberated the punishment to be assessed. Before the return of that verdict, appellant insisted that the trial court rule on his motion for mistrial for fear it might become a moot motion. The court *at that time* overruled the motion for mistrial. It

is that adverse ruling which is properly before the appellate court.

Subsequent to the punishment verdict the trial court conducted a hearing under TEX.CODE CRIM.PROC.ANN. art. 40.-03(7)(Vernon 1979), motion for new trial. All the jurors testified. The trial court commented at the close of the hearing, "[I]t is improper for me to rule at this time until such time as the motion for new trial has actually been filed. At that time, after due consideration, I will rule on the case." No motion for new trial appears in the record; no order overruling a motion for new trial appears in the record; nor does the statement of facts reflect an oral order overruling a motion for new trial. The court made no ruling as to the jurors' testimony; therefore an adverse ruling on the motion for new trial is not before this court. The testimony of the jurors was not received in the hearing on the motion for mistrial.

However, we see that juror Vincente Tapia testified as follows:

THE COURT: What did [the officer] say?

THE WITNESS: Well, to my recollection . . . he said that's why he should just plead guilty and get it over with.

\* \* \* \* \* \*

Q: [Defense Counsel] Mr. Tapia, you had stated that the officer when he was talking to the members of the jury . . . said something about that's why he should plead guilty, to get it over with?

A: That's how I heard it.

\* \* \* \* \* \*

Q: And the officer, when he made that comment, he was referring to that, about [the jury] being tired, right? He said it would be a lot quicker—

A: Yes, sir.

Q: —if he would just plead guilty?

A: That's the way I understood. . . .

\* \* \* \* \* \*

Q: . . . when the officer said that . . . you took it . . . that if [the defendant] had

pleaded guilty, this thing would have been a lot quicker, right?

A: Well, that's the way I understood it. . . .

Examination of juror Charles Monroe revealed the following:

Q: Do you recall [the officer] saying something about 'guilty.'

A: Yes, sir, I sure do. He mentioned the word. I'm pretty sure he mentioned 'guilty.' Something about—I don't know, something 'vote him guilty,' or something like that. I don't know.

The other jurors testified that they did not recall a discussion between the officer and jurors regarding appellant's guilt. Further, each juror, including Tapia and Monroe, stated that any comments the officer may have made had no effect on the verdict or their ability to decide appellant's case, but they based the verdict only on the evidence presented at trial. In addition, it is not clear whether the remarks attributed to the officer referred to the owner of the car being ticketed, generally to defendants in other cases, or to this appellant. If the motion for new trial had been overruled, we would find any presumption of harm arising from the conversation was rebutted by the evidence from all the jurors. *Romo v. State, supra,* at 506.

We stress that we do not condone the officer's remarks to the jury. The conversation was improper. However, the trial court, under the conflicting testimony at the hearing on the motion for mistrial, could determine that appellant failed to establish that matters involving the case at trial were discussed and could find that appellant was not prejudiced by the conversation. The trial court did not err in overruling the motion for mistrial. The second ground of error is overruled.

Judgment of the trial court is affirmed.

CANTU, Justice, concurring.

I agree that the conviction should be affirmed under the state of the record before us. But I do not believe that appel-

lant's first ground of error has been properly addressed.

The majority brushes it aside under a claim that the objection lodged by appellant at the trial level was too general. The objection, recognized by the majority, complained that the testimony offered was extraneous and irrelevant. On appeal appellant complains that the testimony suggested an impermissible extraneous offense. A general objection preserves nothing for review. *McWherter v. State*, 607 S.W.2d 531 (Tex.Crim.App.1980); *Carr v. State*, 600 S.W.2d 816 (Tex.Crim.App.1980); *Simpson v. State*, 507 S.W.2d 530 (Tex.Crim.App. 1974). However, the objection, I believe, sufficiently apprised the trial court of the objectionable nature of the testimony. *See Walls v. State*, 548 S.W.2d 38 (Tex.Crim. App.1977).

The majority further concludes that error in admitting improper testimony was rendered harmless when appellant testified to substantially the same evidence on cross-examination. *See Woolls v. State*, 665 S.W.2d 455 (Tex.Crim.App.1983) and other cases cited by the majority.

I believe the wrong rule has been applied by the majority once again.

Appellant's testimony clearly falls within the rule that a defendant may introduce evidence seeking to meet, destroy, or explain the erroneously admitted evidence. *See Nicholas v. State*, 502 S.W.2d 169 (Tex. Crim.App.1973); *McLaughlin v. State*, 109 Tex.Crim. 307, 4 S.W.2d 54 (1928). A cursory examination of appellant's testimony reveals this, "Sir, I was a little bit—let me explain, sir...." As the majority recognizes, "Appellant went on to explain that he simply meant that he would fight Azzoz; he was not threatening to kill him."

It is erroneous to foreclose review of appellant's preserved appellate complaint through application of the curative admissibility doctrine. I believe, as the State candidly admits, that appellant's contention, if it is to be rejected, must be through some exception to the rule prohibiting the introduction of extraneous offenses.

The general rule is that an accused is entitled to be tried on the accusation made in the State's pleading and that he should not be tried for some collateral crime or for being a criminal generally. *Albrecht v. State*, 486 S.W.2d 97 (Tex.Crim.App.1972).

Evidence of other crimes committed by the accused may be admitted, however, where such evidence is shown to be both material and relevant to a contested issue in the case. *Jones v. State*, 481 S.W.2d 900 (Tex.Crim.App.1972).

It follows that evidence of collateral crimes is admissible if a relationship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged can be shown. *Jones v. State, supra.*

Evidence of extraneous offenses committed by the accused has been held admissible: (1) To show the context in which the criminal act occurred—what has been termed the "res gestae"—under the reasoning that events do not occur in a vacuum and that the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that they may realistically evaluate the evidence. (2) To circumstantially prove identity where the State lacks direct evidence on this issue. (3) To prove scienter, where intent or guilty knowledge is an essential element of the State's case and cannot be inferred from the act itself. (4) To prove malice or state of mind, when malice is an essential element of the State's case and cannot be inferred from the criminal act. (5) To show the accused's motive, particularly where the commission of the offense at bar is either conditioned upon the commission of the extraneous offense or is a part of a continuing plan or scheme of which the crime on trial is also a part. (6) To refute a defensive theory raised by the accused. *Albrecht v. State, supra.*

It has been recognized that where another offense or transaction is a part of the case on trial or closely intertwined therewith, proof of all the facts is permissible. *Mitchell v. State*, 650 S.W.2d 801 (Tex. Crim.App.1983), *cert. denied*, 464 U.S.

1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984); *Archer v. State,* 607 S.W.2d 539 (Tex.Crim. App.1980).

Such extraneous conduct is admissible to show the context in which the criminal act transpired, and includes transactions which occur subsequent to the offense and are necessary for a realistic evaluation of the evidence. *Archer v. State, supra.*

I would hold the testimony complained about admissible as a circumstance tending to prove a consciousness of guilt on the part of appellant. *See Brown v. State,* 657 S.W.2d 117 (Tex.Crim.App.1983); *Rodriguez v. State,* 577 S.W.2d 491 (Tex.Crim. App.1979); *Antwine v. State,* 572 S.W.2d 541 (Tex.Crim.App.1978).

Because an affirmance is called for I concur in the result.