In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00006-CV
______________________________


DANIEL ALVAREZ AND WIFE, FERN ALVAREZ, Appellants
Â 
V.
Â 
MICHAEL P. THOMAS, M. D., MICHAEL P. THOMAS, M.D., P.A., AND 
GULF COAST INFECTIOUS DISEASE ASSOCIATES, P.C., Appellees


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 172nd Judicial District Court
 Jefferson County, Texas
Trial Court No. E-171,021


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â More than 180 days had passed since Daniel Alvarez originally filed his healthcare liability
lawsuit against Michael P. Thomas, M.D., and Alvarez had neither filed an expert reportâas
required by Article 4590i, Section 13, of the Texas Revised Civil Statutesâaddressing Thomas'
actions, nor sought or received any extension of time to file such a report. So, on March 22, 2004,
Thomas mailed to the district clerk a motion to dismiss Alvarez's petition for failure to file the expert
report.


 That would have entitled Thomas to a dismissal, with prejudice, of Alvarez's suit against
him, unless Alvarez effectively nonsuited his claims against Thomas before Thomas filed his motion
to dismiss.
Â Â Â Â Â Â Â Â Â Â Â Â In fact, on March 23, Alvarez hand filed his fourth amended petition


âwhich, because it
dropped Thomas from the list of defendants, was effectively a nonsuit of Thomas. Thomas' motion
to dismiss, mailed March 22, was not received and file marked by the clerk until March 25. The trial
court ultimately granted Thomas' motion and dismissed Alvarez's claim with prejudice. This appeal
followed. We affirm.
Â Â Â Â Â Â Â Â Â Â Â Â The parties in their briefs to this Court, and to the trial court, have based their motion-to-dismiss dispute entirely on the "mailbox rule." See Tex. R. Civ. P. 5. Thomas contends that, under
Rule 5, his motion to dismiss is deemed filed March 22, because he proved it was "deposited in the
mail . . . before" Alvarez's fourth amended petition was filed, and that the motion was received by
the appropriate clerk's office no later than ten days after Alvarez's pleading. Thomas successfully
argued to the trial court, and argues to this Court, that, therefore, he is entitled to a dismissal with
prejudice of Alvarez's suit. Alvarez responds that Thomas did not adequately prove when Thomas
mailed his motion, so the dismissal was filed March 25, two days after his nonsuit. Alvarez argued
to the trial court, and argues to us, that the dismissal was filed after the fourth amended petition, and
that, therefore, Alvarez should be free of the dismissal with prejudice ordered by the trial court.
Â Â Â Â Â Â Â Â Â Â Â Â We hold that Rule 5's "mailbox rule" does not apply where there is no preset deadline for
filing a document, so Alvarez actually filed his nonsuit before Thomas filed his motion to dismiss. 
But, because Alvarez did not present Rule 5's nonapplicability to the trial court, he did not preserve
error. Therefore, we affirm the trial court's dismissal of Alvarez's action with prejudice.
Â Â Â Â Â Â Â Â Â Â Â Â Rule 5 is titled "Enlargement of Time." It applies "[w]hen by [the rules of civil procedure]
or by a notice given thereunder or by order of court an act is required or allowed to be done at or
within a specified time," and the portion of the rule argued here provides:
If any document is sent to the proper clerk by first-class United States mail . . .
properly addressed and stamped and is deposited in the mail on or before the last day
for filing same, the same, if received by the clerk not more than ten days tardily, shall
be filed by the clerk and deemed filed in time. A legible postmark affixed by the
United States Postal Service shall be prima facie evidence of the date of mailing.
Tex. R. Civ. P. 5 (emphasis added). Therefore, Rule 5 explicitly allows a party to meet a specified
filing deadline by mailing a document for filing "on or before the last day for filing same"; and, if
the document is received by the clerk within ten days, it is "deemed filed in time." Id. The plain
wording of the rule makes it applicable to filings for which there is a time limitation or a deadline. 
In other words, a litigant can meet the timeliness requirement by mailing the pleading in a timely
manner, rather than delivering it to the appropriate clerk's office.
Â Â Â Â Â Â Â Â Â Â Â Â Not only does the rule clearly indicate that it applies only to filings that have deadlines, this
Court has previously held that the "mailbox rule" does not enlarge the time for filing a document
unless a deadline has been imposed. Smith v. Tex. Dep't of Criminal JusticeâInst. Div., 33 S.W.3d
338, 341 (Tex. App.âTexarkana 2000, pet. denied). In Smith, this Court held that the "mailbox
rule" did not apply to an inmate's document mailed three days before the entry of an order of
dismissal, since no deadline was imposed for filing the document. Id.
Â Â Â Â Â Â Â Â Â Â Â Â The San Antonio Court of Appeals has similarly held that "Rule 5 does not deem a motion
filed on the date it is placed in the mail when no filing deadline is involved." In re Hearn, 137
S.W.3d 681, 687 (Tex. App.â San Antonio 2004, no pet.). There it was determined that an order
to pay costs was not void even though it was entered after a motion to recuse the judge was mailed. 
The motion to recuse was not deemed filed when mailed because there was no deadline for filing the
motion. 
Â Â Â Â Â Â Â Â Â Â Â Â In a medical malpractice case, the healthcare provider may move for a dismissal if the
plaintiff does not timely file the required expert report. The Texas Supreme Court has specifically
held there is no statutory deadline to file such a motion to dismiss. See Jernigan v. Langley, 111
S.W.3d 153, 156 (Tex. 2003). In Jernigan, the defendant waited almost two years to move to
dismiss the case and, during that time, participated in discovery, filed a motion for summary
judgment on other grounds, and filed other pleadings. None of that constituted a waiver of the right
to move for a dismissal for plaintiff's failure to comply with the medical report requirement. Id. It
is clear that no deadline applied to Thomas' right to move for a dismissal.
Â Â Â Â Â Â Â Â Â Â Â Â Â If this issue had been properly presented, we would hold that Rule 5 does not apply to the
motion to dismiss, as there was no preset deadline for its filing. Therefore, Alvarez's filing of his
nonsuit predated Thomas' filing his motion to dismiss, and the dismissal would have been error. But
the parties did not argue this point to the trial court or to this Court. It would be improper to
conclude the trial court erred on an issue that was not presented to it. See Tex. R. App. P. 33.1. 
Alvarez waived the nonapplicability of Rule 5 by not presenting it to the trial court. Therefore, we
must affirm the dismissal.
Â Â Â Â Â Â Â Â Â Â Â Â Even if Rule 5 were applicable, as the parties presented this matter to the trial court, the
dismissal should be affirmed. Applying Rule 5, the trial court did not abuse its discretion in
dismissing Alvarez's suit; indeed, in light of the uncontroverted evidence that Thomas mailed his
motion to dismiss March 22, the clear language of Article 4590i would have compelled such
dismissal. See Tex. Rev. Civ. Stat. art. 4590i, Â§ 13 (repealed 2003).
Â Â Â Â Â Â Â Â Â Â Â Â Alvarez argues that the envelope in which Thomas' pleading was mailed does not bear a
postmark of the United States Postal Service. Regardless of the truth of that assertion, there is no
contention Thomas' pleading was delivered via private carrier. Counsel for Thomas represented at
the hearing in the trial court, and reiterated in her affidavit, that the motion to dismiss was placed in
the United States mail March 22, 2004, postage prepaid. Likewise, the certificate of service on the
motion to dismiss states the motion was sent to Alvarez's attorney via certified mail and to three
other attorneys by regular mail. In the absence of a legible postmark, an attorney's uncontroverted
affidavit establishing the date of mailing may be sufficient evidence of the mailing date and,
therefore, of the filing date. Lofton v. Allstate Ins. Co., 895 S.W.2d 693, 693â94 (Tex. 1995); see
Arnold v. Shuck, 24 S.W.3d 470, 472 (Tex. App.âTexarkana 2000, pet. denied) (testimony of legal
assistant sufficient as evidence of timely mailing); Hodges v. State, 539 S.W.2d 394, 396 (Tex. Civ.
App.âAustin 1976, no writ) (counsel's sworn motion, uncontroverted by opposing party, sufficient
to demonstrate compliance with Rule 5 where envelope not produced).
Â Â Â Â Â Â Â Â Â Â Â Â Alvarez claims that the file mark on Thomas' motion to dismiss (March 25, 2004) should
control in determining the date of filing. But there are multiple forms of prima facie evidence by
which a court may determine the filing date under the "mailbox rule." Thomas' certificate of service
and his attorney's affidavit are both prima facie evidence of the date of mailing. Alvarez offered
nothing to controvert either the certificate of service or the attorney's affidavit. 
Â Â Â Â Â Â Â Â Â Â Â Â Alvarez directs us to Texas Beef Cattle Co. v. Green, 862 S.W.2d 812 (Tex.
App.âBeaumont 1993), rev'd on other grounds, 921 S.W.2d 203 (Tex. 1996), as authority that an
attorney's affidavit and a postage meter stamp fail to overcome the presumption of date of mailing
established by a United States Postal Service postmark. Id. at 814. While that is the holding there,
such a comparison is inapposite here, where there is no United States postmark to be considered.
Â Â Â Â Â Â Â Â Â Â Â Â True, Rule 5 provides, as Alvarez argues, that a United States postmark is prima facie
evidence of the date of mailing. But the rules and caselaw provide for other forms of prima facie
evidence which may be considered. See Tex. R. Civ. P. 21a. An attorney's certificate of service
constitutes prima facie evidence of service. Meek v. Bishop Peterson & Sharp, P.C., 919 S.W.2d
805, 809 (Tex. App.âHouston [14th Dist.] 1996, writ denied); Havens v. Ayers, 886 S.W.2d 506,
509 (Tex. App.âHouston [1st Dist.] 1994, no writ).
Â Â Â Â Â Â Â Â Â Â Â Â Thomas provided prima facie evidence of having placed the motion to dismiss in the United
States mail, postage prepaid, by way of the certificate of service and the attorney's affidavit. Alvarez
offered no evidence controverting the affidavit of Thomas' counsel or the certificate of service
attached to the motion to dismiss. The trial court had ample evidence to find that Thomas' motion
for dismissal was mailed March 22, 2004. If Rule 5 applied, as was argued by the parties, the motion
would have been filed March 22, before the nonsuit.
Â Â Â Â Â Â Â Â Â Â Â Â Article 4590i is explicit. If a plaintiff fails to provide the required expert report within 180
days of the filing of his or her suit, on motion by the defendant, a trial court shall dismiss with
prejudice the plaintiff's cause of action. Tex. Rev. Civ. Stat. Ann. art. 4590i, Â§ 13.01. Once a case
matures as did this one, without the filing of a qualifying expert report, if thereafter the defendant's
motion to dismiss is filed before the plaintiff's nonsuit, the trial court must dismiss with prejudice
the plaintiff's suit. Am. Transitional Care Ctr. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001).
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the trial court's judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â May 24, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â August 26, 2005



-even-header:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-185-CR%20Bowser%20v.%20State%20Opinion%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
-->











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00185-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MONTRELL EDWARD BOWSER,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 7th Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Smith County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 007-0047-10

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Moseley








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION 

Â 

In Smith County,[1]
Texas, Montrell Edward Bowser was indicted for the aggravated robbery of a
convenience store.Â  He pled not guilty. Â At the conclusion of voir dire, the State
exercised four peremptory challenges, striking the only four African Americans
among the potential jurors.Â  Bowser
objected to three[2] of the
strikes, arguing that the State struck the jurors because of their race,
thereby violating Batson v. Kentucky,
476 U.S. 79 (1986).Â  After a hearing, the
trial court denied BowserÂs Batson
challenge and seated the jury.Â  

During closing arguments of the
guilt/innocence phase of the trial, the State mentioned Âmore aggravated
robberies.ÂÂ  Bowser objected to the
reference and moved for an instruction to disregard as well as a mistrial.Â  The trial court sustained the objection and
instructed the jury to disregard the statement.Â 
However, the trial court overruled BowserÂs motion for mistrial.Â  The jury found Bowser guilty and assessed a
sentence of forty yearsÂ imprisonment.Â  

On appeal, Bowser contends that the trial
court erred in: Â (1) denying his Batson motion; and (2) overruling his
motion for mistrial.Â Â  

Â Â Â Â Â Â Â Â Â Â Â  We affirm
the trial courtÂs judgment because: Â (1)
the trial court was within its discretion to deny the Batson challenge; and (2) the StateÂs argument was a plea to law
enforcement.

The Trial Court Did
Not Err in Overruling BowserÂs Batson
Challenge

Â 

Â Â Â Â Â Â Â Â Â Â Â  After voir dire, among
the StateÂs strikes were jurors number 18, 21, and 28, all of whom were African
American.Â  Bowser, who is African
American, objected and argued that the State struck the jurors because of their
race, thereby violating Batson.Â  After a hearing, the trial court denied
BowserÂs Batson challenge and seated
the jury.Â  In his first point of error,
Bowser argues that the trial court erred in denying his Batson challenge. 

Â Â Â Â Â Â Â Â Â Â Â  The Equal
Protection Clause of the Fourteenth Amendment to the United States Constitution
prevents the exercise of peremptory strikes based on a prospective jurorÂs
race. Batson, 476 U.S. 796; Guzman v. State, 85 S.W.3d 242, 245
(Tex. Crim. App. 2002); Splawn v. State,
160 S.W.3d 103, 114 (Tex. App.ÂTexarkana 2005, pet. refÂd); see Tex.
Code Crim. Proc. Ann. art. 35.21 (West 2006).

Â Â Â Â Â Â Â Â Â Â Â  Once a Batson challenge is raised, the trial
court engages in a three-step inquiry. Â Purkett v. Elem, 514 U.S. 765, 767Â68
(1995); Ford v. State, 1 S.W.3d 691,
693 (Tex. Crim. App. 1999); Montgomery v.
State, 198 S.W.3d 67, 76 (Tex. App.ÂFort Worth 2006, pet. refÂd).Â  Under the first step, the person raising a Batson challenge is required to make a
prima facie showing of racial discrimination.Â 
Ford, 1 S.W.3d at 693; Montgomery, 198 S.W.3d at 76. Â Once that prima facie showing is accomplished,
the burden shifts to the State to present a racially neutral reason for the
challenged jury strikes.Â  Ford, 1 S.W.3d at 693; Montgomery, 198 S.W.3d at 76.Â  Third, and finally, once the StateÂs reason
is proffered, the burden of persuasion shifts back and the person raising the
challenge must then convince the court that the reason given by the State was
not race-neutral and was merely pretext for concealing discrimination.Â  Ford,
1 S.W.3d at 693 (citing Purkett, 514
U.S. at 767Â68).

Â Â Â Â Â Â Â Â Â Â Â  We review
the evidence relevant to the Batson
challenge in the light most favorable to the trial courtÂs ruling.Â  Cantu
v. State, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992); Roberts v. State, 963 S.W.2d 894, 899 (Tex. App.ÂTexarkana 1998, no
pet.).Â  A high degree of deference is
given to the trial court, who is in the best position to determine if the StateÂs
facially neutral explanation for a peremptory strike is genuine. Â Splawn,
160 S.W.3d at 114 (citing Jasper v. State,
61 S.W.3d 413, 421Â22 (Tex. Crim. App. 2001)). Â Thus, a Âclearly erroneousÂ standard of review
is applied to the trial courtÂs decision to overrule a Batson challenge.Â  Hernandez v. New York, 500 U.S. 352, 369
(1991); Splawn, 160 S.W.3d at 114 (citing Gibson v. State, 144 S.W.3d 530, 534
(Tex. Crim. App. 2004)). Â A finding is
clearly erroneous where the reviewing court Âis left with the definite and firm
conviction that the trial court committed a mistake.ÂÂ  Roberts,
963 S.W.2d at 899.

Â Â Â Â Â Â Â Â Â Â Â  During voir
dire, the State went row by row and asked the jurors to raise their cards Âif
[they] believe the purpose behind sentencing somebody is to punish them, [even]
if itÂs a little more than rehab[ilitation].ÂÂ 
The records show that the State identified, by number, each potential
juror that raised their card.Â  The
challenged strikes, venirepersons number 18, 21, and 28 were among those that
did not raise their cards.

Â Â Â Â Â Â Â Â Â Â Â  During the Batson hearing, the trial court took
judicial notice that Bowser was African American.Â  There was no dispute that the struck jurors
were also African American and that the strikes left the venire panel devoid of
African American jurors.Â  The trial court
found that Bowser had made a prima facie showing of racial discrimination.Â  The State argued that the challenged strikes,
venirepersons number 18, 21, and 28, were struck because they believed that
rehabilitation was the primary goal of the sentencing phase of the trial.Â  The State pointed out several other,
nonminority, venirepersons that it struck for providing the same answer.Â  In addition, the State proffered that
venireperson number 21 was Âsingle, had no children,Â and Âwould be the only
person in the strike line that met any of those criteria.ÂÂ  The State also argued that venireperson
number 28 put ÂnothingÂ in the employment blank of the jury questionnaire.Â  

Â Â Â Â Â Â Â Â Â Â Â  The trial
court found that the State offered race-neutral reasons for striking the three
venirepersons.Â  In rebuttal, Bowser
contended that the State could not have concluded that these three
venirepersons were Ârehabilitators,Â because the State never specifically asked
which jurors believed sentencing was primarily for rehabilitation.Â  He argued that the StateÂs stated reason for
the strikes was improper because it was not based upon any affirmative answer,
but rather, was based upon their silence.Â 
After the hearing, the trial court found that Bowser failed to overcome
or rebut the StateÂs race-neutral reasons for the three strikes and denied the Batson challenge.Â  

Â Â Â Â Â Â Â Â Â Â Â  In Montgomery and Victor, our sister courts found that Âa venirememberÂs belief in
rehabilitation as the primary goal of punishment is a race-neutral reason for
the exercise of a peremptory challenge.Â Â Montgomery,
198 S.W.3d at 76; Victor v. State,
995 S.W.2d 216, 222 (Tex. App.ÂHouston [14th Dist.] 1999, pet. refÂd). Â We conclude that the trial courtÂs finding
(i.e., that the State proffered a sufficient race-neutral reason for striking venirepersons
18, 21, and 28 and that Bowser failed to meet his burden of persuasion to
demonstrate otherwise) was not clearly erroneous. Â See
Splawn, 160 S.W.3d at 115.Â 
Accordingly, we overrule this point of error.

The StateÂs Argument
Was a Plea to Law Enforcement

Â 

Â Â Â Â Â Â Â Â Â Â Â  During
closing arguments of the guilt/innocence phase of the trial, the State made the
following argument:

And IÂd submit to you that no case is more obvious
than this one.Â  Because if you use your
common sense and follow the law, heÂs guilty. Â The only way he walks out that door to commit
more aggravated robberies is to leave that to the side. 

Â 

Bowser objected, arguing that the StateÂs argument was improper,
specifically the references to BowserÂs Âalleged future actions.ÂÂ  Bowser also requested an instruction to
disregard.Â  The trial court sustained the
objection, and instructed the jury to disregard the StateÂs last
statement.Â  Bowser then moved for a
mistrial, which the trial court denied. Â 

Â Â Â Â Â Â Â Â Â Â Â  In his
second point of error, Bowser argues that the trial court erred by denying his
motion for mistrial.

Â Â Â Â Â Â Â Â Â Â Â  Prosecutorial
jury argument is permissible if it falls within one of the following
categories: (1) summation of the evidence; (2) reasonable deduction drawn from
the evidence; (3) answer to argument of opposing counsel; and (4) a plea for
law enforcement. Â Shannon v. State, 942 S.W.2d 591, 597 (Tex. Crim. App. 1996).Â  If the StateÂs argument is improper, falling
outside the permissible four categories, we examine for harm, balancing three
factors: Â (1) the severity of the
misconduct (the magnitude of the prejudicial effect of the prosecutorÂs
argument); (2) measures adopted to cure the misconduct (the efficacy of any
cautionary instruction by the court); and (3) the certainty of conviction
absent the misconduct (strength of the evidence supporting the conviction).[3]
Â Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). [4]


Â Â Â Â Â Â Â Â Â Â Â  The
threshold issue is whether or not the StateÂs argument was improper, and as the
StateÂs remarks are clearly not a summation of the evidence, a reasonable
deduction drawn from the evidence, or an answer to argument of opposing counsel,
we examine whether the StateÂs argument amounted to a plea for law enforcement.Â  The State may make a proper plea for law
enforcement, including arguing the relationship between the juryÂs verdict and
the deterrence of crime in general or specific types of crimes by its verdict. Â Borjan
v. State, 787 S.W.2d 53, 55Â56 (Tex. Crim. App. 1990).Â  The argument that the jury should get the
defendant off the streets has also been held to be a proper plea for law
enforcement. Â Smith v. State, 114 S.W.3d 66, 72 (Tex. App.ÂEastland 2003, pet.
refÂd).

Â Â Â Â Â Â Â Â Â Â Â  Here, the State
argued that if Bowser was not convicted, he would commit other aggravated
robberies in the future.Â  It is similar
to arguments found to be proper pleas for law enforcement in Starvaggi v. State, 593 S.W.2d 323, 328
(Tex. Crim. App. 1979) (ÂI hope he doesnÂt come knocking on one of your doors
at eight oÂclock in the evening . . .Â); McBride
v. State, 706 S.W.2d 723, 729 (Tex. App.ÂCorpus Christi 1986, pet. refÂd)
(ÂThey always say about doctors that they bury their mistakes. Â You-all make a mistake and they might bury
somebody else.Â), and Sanchez v. State,
622 S.W.2d 491, 493 (Tex. App.ÂCorpus Christi 1981), revÂd & remanded on other grounds, 628 S.W.2d 780 (Tex. Crim. App.
1982) (ÂWould you be standing next to him the next time he went berserk on one
of your children or one of your friends?Â).Â 
Therefore, we find the argument to be a plea for law enforcement and
overrule this point of error. Â  We affirm
the judgment. 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bailey
C. Moseley

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Date Submitted:Â Â Â Â Â Â Â Â Â  October 3, 2011

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  October 5, 2011

Â 

Do Not Publish 

Â 

Â 











[1]This
case was transferred to this Court from the Tyler Court of Appeals as part of
the Texas Supreme CourtÂs docket equalization program. Â We are not aware of any conflict between the
precedent of the Tyler Court and the precedent of this Court on any issue
relevant in this appeal. Â See Tex.
R. App. P. 41.3.

Â 





[2]The
State struck jurors number 18, 21, 28, and 33; however, juror number 33 was not
identified in BowserÂs Batson
challenge, presumably because the jury was seated from the first thirty-two
venirepersons.Â Â  





[3]Â[T]he Mosley factors should be used to
evaluate whether the trial court abused its discretion in denying a mistrial
for improper argument, at least in cases like this one, in which constitutional
rights are not implicated.ÂÂ  Hawkins v. State, 135 S.W.3d 72, 77
(Tex. Crim. App. 2004). Â 

Â 





[4]Bowser
cites us to Garrett v. State for the
proposition that we should examine whether the StateÂs improper argument Âmight
have contributed to the conviction or the
punishment assessed.ÂÂ  632 S.W.2d
350, 353Â54 (Tex. Crim. App. [Panel Op.] 1982) (emphasis added).Â  However, Garrett
does not support that proposition, as it merely states that in applying the Mosley factors, we should examine the
evidence adduced at the guilt/innocence stage, and, if applicable, the evidence
adduced at the punishment stage of the trial.