JOHN C. MENDEZ v. STATE.

No. 30,686. May 20, 1959.
Motion for Rehearing Overruled October 7, 1959.

*Murray Howze*, Monahans, and *Wm. E. Davenport*, San Angelo, for appellant (on appeal only).

*Leon Douglas*, State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is murder; the punishment, 25 years.

Deputy Sheriff Williams testified that on the night in question, in response to a call, he went to the El Patio Bar and there found the appellant standing on the back porch with a pistol in his hand, the body of the deceased punctured with several bullet holes lying on the ground, and the appellant announced, "I shot Barney."

Justice of the Peace Boyt, who was called to the scene, testified that he found no weapon on or about the body of the deceased.

J. E. Harris, investigator for the district attorney's office,

testified that on the day following the homicide he questioned the appellant, who at that time told him that he was being robbed of his day's receipts by three men at the time he shot the deceased and that his money was gone, and that such version of the transaction was reduced to writing and signed by the appellant. He stated further that later in the day he searched the appellant's home and there found the money sack which the appellant had said was missing and then asked for, and received, the appellant's consent to take a lie detector test. Harris testified that the next morning as they started to Austin for that purpose the appellant stated that he wanted to make another statement and that when they arrived at the Texas Department of Public Safety in Austin he and the polygraph operator Albert talked to the appellant, and the confession, which was introduced in evidence, was then reduced to writing and no polygraph test was taken. It recites, in part, as follows:

"Everytime I started closing the place I always put my pistol, 38 light weight snub nose revolver, in my back pocket and I did the same thing then. Barney (the deceased) then called me and I went over to him and we walked out the back door together. He asked me again for some money, fifty dollars, and I told him no that I needed it for the trip. He backed off a little and put his hand in his pocket. I had had trouble with him before so I pulled out my pistol and started firing at him at close range. The first shot hit him in his face, he spun off the porch, fell and I kept firing at him. I shot at him about four times."

Appellant testified *only* before the court and in the absence of the jury on the question of the voluntary nature of the second confession. He stated that he signed the same because Harris had told him he had to produce the other robbers and that he was going to continue to investigate the case and file a case against his wife charging her with being an accessory to murder.

Miles Crawford, testifying for the appellant, stated that shortly before he heard the shots at El Patio he had been over there and had observed the deceased and two other men lurking outside. The state called Crawford's former wife in rebuttal, who testified that Crawford had not been out of the house for perhaps an hour before she heard the shots at El Patio.

It was shown that the deceased's reputation for being a peaceable and law abiding citizen was bad.

We shall discuss the contentions advanced by appellant's eminent counsel on appeal in brief and argument.

He first contends that the confession was not admissible because it recited that it was made to Harris, while the evidence discloses that it was made to Albert and not Harris. We do not agree. Harris testified that both he and Albert warned the appellant, the statement was made to both of them, and Albert did the typing. This is a sufficient compliance with the statute.

He further contends that the portion of the confession quoted above was exculpatory, that the state failed to disprove it, and that it was fundamental error for the court to fail to so charge the jury. We have concluded that the confession quoted does not establish self defense as a matter of law. In Perez v. State, 160 Texas Cr. Rep. 376, 271 S.W. 2d 281, we said, "A statement is not exculpatory unless it exculpates. We cannot read into such a sentence ('Then a big fellow started after me and I shot him twice.') all the elements requisite to raise the issue of self defense."

In Jureczki v. State, 152 Texas Cr. Rep. 88, 211 S.W. 2d 231, we held that the issue of self defense was not raised by the testimony, "I told him if he came any closer I would shoot him." We held that we would not be authorized to read into such a statement the requisite elements of self defense. There is nothing in the confession to indicate that the appellant believed himself to be in danger at the time he shot, and we hold the statement quoted not to be exculpatory as a matter of law. The court instructed the jury that the state was bound by the entire confession which it had introduced, and we find no objections to the charge.

We may not consider the appellant's claim of jury misconduct because the statement of facts on the motion for rehearing, in which evidence was introduced on this subject, has not been approved by either the trial judge or counsel, as is required by the statute, Article 759a, Vernon's Ann. C.C.P.

Appellant's last contention, and the one which he says presents the most serious question, is that the evidence is undisputed that the confession was inadmissible as a matter of law because the state failed to contradict the appellant's statement made in the absence of the jury that one of the reasons he confessed was because Harris told him that he was going to continue his investigation and file a case against his wife charging her with being an accessory to murder. It should be remembered that the appellant waived his right to have the jury pass upon

the voluntary nature of the confession. Harris testified as follows:

"Q.   I believe you testified that you talked to Mendez about the implication of his wife, when did you do that? A.   I did it on the 16th; on the Monday after this happened on Sunday night.

"Q.   Was that before the statement of the 16th, or afterwards? A.   That was during the interrogation, when we brought him down, when I was talking to him, I asked him if his wife was involved in any way, where was she at, and this, and that, and the other, just a routine interrogation.

"Q.   And at that time you advised him that you might have to file on her? A.   If the investigation, when we finished it, if we dug up any evidence that she was involved in it, I would file on her.

"Q.   Then did you proceed to take a statement on the 16th? A.   Yes, sir."

We think the record is clear that the witness was discussing the first statement which mentioned the robbery, and hold that the second confession was not shown to be inadmissible as a matter of law.

We overrule appellant's contention that the court's charge in which he defined murder was fundamentally erroneous.

Finding the evidence sufficient to sustain the conviction and no reversible error appearing, the judgment is affirmed.