## WALTER HENRY MOSLEY V. STATE

No. 33,900. January 10, 1962
Motion for Rehearing Overruled February 28, 1962

*E. A. Berry, Jr.,* Dickinson, and *Joe Moss,* Houston 2, for appellant.

*Frank Briscoe,* District Attorney, *Samuel H. Robertson, Jr., Howell E. Stone,* Assistants District Attorney, Houston, and *Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Presiding Judge.

The offense is murder; the punishment, death.

The indictment alleged the voluntary killing with malice aforethought of Tommy Box by shooting him with a gun.

Tommy Box, a 13 year old boy, and his father, Brady Box, were employees at the Luce Oil Company Service Station at the intersection of Little York and Aldine-Westfield Road.

Joseph Paul LaMier, a customer of the service station for some ten years and who had been acquainted with Brady Box and Tommy Box for some eight or ten weeks, drove into the service station about 8:30 P.M. to get some gas. When no one came out to wait on him he entered the service station and found

Tommy Box lying on his back gasping for breath. The dead body of Brady Box was nearby.

Tommy Box died several days later from gunshot wounds in the head and neck.

Officers investigating the shooting went to appellant's home where he delivered to them a .22 caliber automatic rifle, saying, "this is the gun you are looking for."

A number of fired shells or hulls found on the floor at the service station, and some leaden bullets found in the body of Tommy Box and Brady Box, were compared with test shells and bullets fired from the .22 caliber rifle, and the ballistic expert identified some of the recovered empty shells or hulls and bullets as having been fired from said rifle.

Appellant's confession was introduced in evidence without objection, in which he related how Brady Box had purchased his house, paying $70.00 in cash and giving him a check for $30.00 which was returned unpaid, and his difficulty in collecting from Brady Box thereafter and continuing:

"I was just trying to get my money from him and he would not pay me. He was about two months behind and had a third one coming up. He talked to the *fineance* company and they talked about taking the house away from me and signing it over to him. About three weeks ago I filed eviction notice on him to move and nothing has happened about this. About two weeks ago I *ask*— him if he had received any eviction papers, he said, no I have not heard anything about any papers. I had heard from people that he was telling them that they was going to take the house away from me and *signing* it over to him. All of this and the way that he had been doing me made me mad, it had all been building up. I kept trying to get my money and he got it into his head someway that he was not going to pay me at all and all of this made me mad.

"I had some tickets that I had let a few people have credit when I had the station and I took these tickets today, April 26, and went to try to *colect* the money on. I *colected* some of the money and while I was out in that neighborhood I went by this station where Brady works to see what he was going to do about paying me. He told me that he was not going to pay me. He said that he had a *recipt*. He did have a *recipt in* which I gave him when he gave me these checks and the checks came back. He

also told me that he was not going to pay me as the people told him that he did not have to pay me. He said, they told him that they would draw up a new contract and sign the house over to him. All of this made me mad and I was already burning over the whole deal. I told him that I was going to turn the check over to the D.A. He told me he did not owe me anything. We argued back and *fourth* for some time, him telling me that he was not going to pay me what he owed me and that made me madder. I started out to the car, I was going to leave but I was burning up. I got in the car and sat there for a minute. I reached in the back of the car on the floor and got my gun. I put this gun in the car before I left the house, I don't know why I put the gun in the car, I just put it in there. I went back in the place. I told him he had done wrong when he thought that he was going to beat me out of my house. At this time Brady was out in the front out from behind the counter, the boy was back behind the counter setting up on the counter. When I went in with the gun Brady went back behind the counter. I raised the gun up to my shoulder and pointed it at Brady and he raised his arms up and backed off and I started shooting. I just kept shooting and the boy jumped up and I don't know how he got in it. He ran over and said, you have shot my Dad, I kept shooting, I don't know how many times that I shot it must *to* have been 8 or 9 times. I never did go behind the counter but I went up to the counter and stuck the gun over the counter. This is a .22 cal. *simi* Automatic, rifle. Brady fell and the boy fell close to him. I don't know what time this happened or what time they found them. I then drove out Aldine Road and rode around for a while and then went home. I did not say anything to my wife or anyone else about this until the officers came for me. I stayed at my house until the officers came and got me. When I got home I took the gun out of my car and put it in the garage and when the officers came after me I gave them the gun out of the garage where I had put it when I came home. I had my brother's car and the officers brought it to the police station."

Appellant offered no witnesses and his counsel did not cross-examine any of the witnesses for the state.

The court, in his charge, gave effect to Art. 42 P.C. and instructed the jury: * * * if you believe from the evidence, beyond a reasonable doubt, that the Defendant, Walter Henry Mosley, on or about the 25th day of April, A. D., 1960, in the County of Harris and State of Texas, with malice aforethought, intended to kill Brady Box by shooting him with a gun and in the act of preparing for or executing the same, through mistake or accident,

killed Tommy Box by shooting him with a gun, you will find the Defendant guilty of Murder with Malice Aforethought and assess his punishment at death or confinement in the penitentiary for life or any term of years not less than two."

Appellant's first ground for reversal is that Criminal District Court No. 5 of Harris County, where the case was tried, had no jurisdiction because the indictment was returned into Criminal District Court No. 3 of Harris County, and the cause was never transferred from said Criminal District Court No. 3.

The question was raised for the first time on appeal.

The rule applicable is thus stated in Brady v. State, 119 Texas Cr. Rep. 178, 44 S.W. 2d 373:

"* * * * in instances in which there are two district courts, each having criminal jurisdiction, situated in the same county, and the legislative provision authorizing the transfer of cases from one to the other, it is too late on appeal to complain, as is done in the present case, that the trial is upon an indictment filed in one of the courts and the trial is had in the other. Under such circumstances, the presumption will be indulged that the proper transfer was made. See Lindley v. State, 99 Texas Cr. Rep. 85, 268 S.W. 167; Koehan v. State, 93 Texas Cr. Rep. 368, 248 S.W. 365; Walker v. State, 98 Texas Cr. Rep. 663, 267 S.W. 988." See also Gower v. State, 169 Texas Cr. Rep. 81, 332 S.W. 2d 328.

The remaining ground for reversal relates to the court's charge wherein the jury was instructed that if the statement of appellant, introduced in evidence, contained exculpatory matters, the state would be bound thereby unless shown to be untrue under all the evidence in the case.

We do not find in appellant's confession any statement which would exculpate him. All of the statements in the confession were consistent with guilt. Baird v. State, 156 Texas Cr. Rep. 644, 246 S.W. 2d 192; Steen v. State, 158 Texas Cr. Rep. 77, 253 S.W. 2d 279; Carpenter v. State, 169 Texas Cr. Rep. 283, 333 S.W. 2d 391.

We observe, however, that the instruction on exculpatory statements found in the court's charge appears to be sufficient under the rule stated in 1 Branch's Ann. P.C. 2d Ed. 103, Sec. 95.

The court submitted murder without malice, but the jury found that appellant acted with malice aforethought. We do not agree that the evidence shows as a matter of law that the killing was not upon malice aforethought.

The judgment is affirmed.

ON MOTION FOR REHEARING

MORRISON, Judge.

Appellant again urges that this cause should be reversed because there was not a proper transfer of the case from Criminal District Court No. 3 to Criminal District Court No. 5 in accordance with Article 52-158b, Sec. 3, V.A.C.C.P. This question was raised for the first time on appeal.

In addition to what we said on original submission, we note that in the recent case of McNeal v. State, 171 Texas Cr. Rep. 180, 346 S.W. 2d 345, construing Article 52-185b, supra, we said:

"In counties in which there are two or more district courts having concurrent jurisdiction in all felony cases with statutory authority to transfer cases from one to the other, the plea to the jurisdiction, because of the omission of such order, comes too late after notice of appeal."

We also remain convinced that we properly disposed of appellant's contention relating to the court's charge on exculpatory statements on original submission.

In Lazarine v. State, 129 Texas Cr. Rep. 605, 91 S.W. 2d 363, a murder case in which the evidence revealed that appellant killed the deceased because deceased had been having sexual intercourse with appellant's wife, this Court held that statements in the confession which merely showed the mental attitude of appellant at the time of the homicide did not require giving the special charge on exculpatory statements. See also Mendez v. State, 168 Texas Cr. Rep. 315, 327 S.W. 2d 454; Minton v. State, 164 Texas Cr. Rep. 580, 301 S.W. 2d 87; and Stephen v. State, 163 Texas Cr. Rep. 505, 293 S.W. 2d 789.

We note further, however, that the instruction on exculpatory

statements found in the court's charge is substantially the same as the one we approved in Minton v. State, supra.

Appellant's motion for rehearing is overruled.