**Mark Douglas GOLDBERG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. C14–84–00767–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 7, 1985.

Anthony Griffin, Galveston, for appellant.

Miguel Martinez and Susan Burris, Asst. Dist. Attys., Galveston, for appellee.

Before JUNELL, ROBERTSON and CANNON, JJ.

## OPINION

ROBERTSON, Justice.

The conviction is for murder; the jury rejected appellant's not guilty plea, found he had twice previously been convicted of felony offenses and assessed punishment at confinement for life. Issues before us concern sufficiency of the evidence to prove the identity of the deceased, failure of the court to charge the jury on the exculpatory statement of appellant and the legality of appellant's arrest. We affirm.

Appellant does not challenge the sufficiency of the evidence in general. Therefore it is unnecessary to summarize it except as necessary to address the grounds of error presented.

In his first ground of error appellant contends the trial court erred in failing to grant his motion for instructed verdict of not guilty because the evidence was insufficient to sustain the allegation of the indictment that appellant killed *Neal Blume*. While appellant's confession referred to the deceased only as "K.O.", there is ample evidence that Neal Blume, the deceased, was known by the nickname of K.O.. The first ground is overruled.

In his second ground appellant contends the court erred in failing to instruct the jury "as to the exculpatory nature" of appellant's written statement introduced into evidence by the state. None of appellant's statement was excised by the state. In the confession the appellant gave the following account: On the evening of the offense he went by deceased's home and got a ride from there to a lounge. K.O., the deceased, was already at the lounge. Appellant relates that he began drinking around 8:30 p.m. and that he got "drunk". K.O. told the appellant that he needed to talk to

him and appellant said he didn't want any trouble at the lounge and would see K.O. at the house later. K.O. left shortly thereafter. Later, appellant returned to K.O.'s house with the two men who had given him a ride to the lounge. While they waited in the car for K.O. to come home, they continued to drink. K.O. finally arrived around 2:00 or 3:00 a.m.. The statement then continues with what thereafter occurred and is quoted below:

> He got out of the car and when he did I asked him what he wanted to talk to me about. KO said he wanted to talk to me about Liz. He said he thought that I was having something to do with her. We went insdie [sic] the house and he sat down in the chair next to the window. I sat down in another chair. He started saying that I was fucking Liz. I told him that I had nothing to do with her. He got up and went to the kitchen and he asked me if I wanted a beer and I told him yes if he could spare one. Then I asked him what he wanted to talk to me about and he said he wanted to talk to me about liz [sic], again. After he finished his beer he got up and came up to me. He started cussing me out and accused me of screwing Liz. I got up and told KO that I was going to leave cause he was drunk. He told me that I wasn't going anywhereuntil [sic] he talked to me. I told him I would talk to him when he sobered up. I started walking out to leave and KO grabbed me by the back of my shirt and pulled me to the floor. He started hitting on me. I told him I wanted to get up. KO told me I wasn't going to get up. One of the dudes, the one with short blond curly hair, came in. I told him to get KO off of me. The dude told KO to get off of me and KO told him to get the fuck out of the house. I kneed ko in the nuts and got him off of me. When I pushed him off it felt like he was lighter. I noticed that the dude in the red shirt was standng [sic] right there. I ran into the kitchen and got the knife. I came back into the room where KO was. He started coming at me and I stabbed him about 3 or 4 times. He fell on the

bed. Then he got up againand [sic] I stabbed him again and he fell back down. I stabbed him some more after he hit the floor. I went into his right rear pocket and took his wallet out and took $15.00 out of it.

Appellant argues that this portion of the statement shows appellant was acting in "self-defense" and that the trial court should have instructed the jury that he was entitled to an acquittal unless these statements were disproved by the state. In overruling appellant's objection the trial judge stated, the "court is of the opinion that the confession does not contain an exculpatory statement." We agree.

A statement is not exculpatory unless it exculpates. In order to exculpate on the basis of self-defense, the statement would have to "establish self defense as a matter of law." *Mendez v. State,* 168 Tex. Cr. R. 315, 327 S.W.2d 454 (1959). Appellant's confession does not contain any of the elements of self-defense as provided for in Section 9.32 of the Penal Code. Under such provision, to find the appellant was justified in using deadly force, the evidence must show that he was justified in using force against the deceased under Section 9.31 of the Penal Code, that a reasonable person in his situation would not have retreated and that deadly force was used only to the degree the appellant reasonably believed was immediately necessary to protect himself from the other's use or attempted use of *deadly* force. Tex.Penal Code Ann. § 9.32 (Vernon Supp.1985).

On much stronger evidence where the accused's statement set out:

> The wetback with the blue jacket turned around in the door of the small room in Donny's Place and he pulled his gun. I told him to hold it and he pulled his gun. I came with my gun and beat him to the draw, shot, and then I ran out in the back behind Donny's Place,

the Court of Criminal Appeals held the statement was not exculpatory and that a charge thereon was not necessary. *Daniel v. State,* 668 S.W.2d 390, 392 (Tex.Crim.

App.1984). The language of the court is appropriate here:

> Although there is no evidence that appellant had a reasonable expectation or fear of death or serious bodily injury, the quoted portions of the statements may have been sufficient for submitting the issue of self defense to the jury, and the careful trial judge did so, but they do not show self defense as a matter of law. A charge on exculpatory statements in these circumstances would be tantamount to charging the jurors that they would have to acquit the appellant, since the record does not include any evidence to rebut these statements. The statements are not exculpatory. The court did not err in refusing to submit the requested charge. *Daniel,* at 393.

Just as in that case, the trial court here included an instruction on the law of self-defense in the charge to the jury. This adequately protected appellant's rights. The second ground is overruled.

In his third ground of error, appellant contends his arrest "was constitutionally violative in that it was without warrant." In its brief the state challenges the sufficiency of this ground of error because it "does not specifically complain of any trial court ruling or admission of evidence made in error" as required by TEX.CODE CRIM.PROC.ANN. art. 40.09 sec. 9 (Vernon Supp.1985). We agree. While it is reasonable to *assume* appellant intended to attack the admissibility of his confession upon the basis of his contention that the arrest was illegal, he has not done so. We refuse to make this assumption and rewrite his ground of error. This ground is overruled as nothing is presented for review.

The judgment is affirmed.