**Opinion issued November 28, 2017**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-16-00768-CR

_____

**RUBEN LEE ALLEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1487627**

---

## O P I N I O N

A jury found appellant, Ruben Lee Allen, guilty of the offense of aggravated

robbery with a deadly weapon.[1]  After finding true the allegation in an enhancement

---

[1]     *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).

paragraph that he had previously been convicted of a felony offense, the jury assessed his punishment at confinement for twenty-five years. In two issues, appellant contends that the trial court lacked jurisdiction over this case and the $200 "Summoning Witness/Mileage" fee[2] assessed against him is unconstitutional.

We modify the trial court's judgment and affirm as modified.

## Background

Kannan Rajan, the complainant, testified that as the pharmacist at the BZ Pharmacy in Harris County, Texas, he was responsible for handling the money in the pharmacy's cash register, the prescription medications, and other property of the pharmacy. On September 11, 2015, while his assistant technician was on break and he was alone in the pharmacy, the complainant went to the restroom. When he came out, a black man, standing at the restroom's door, pointed a firearm at his head. The man told the complainant to "look down" and open the pharmacy's safe, which contained paperwork, certain narcotic medications, and money. The complainant did not see the face of the man with the firearm, but he saw the firearm and feared that he would die. The complainant noted that the man had two other people with him, but he was unable to see their faces because they were wearing hoods. After

---

[2]     *See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3), (b) (Vernon Supp. 2016) (imposing $5 charge on defendant convicted of felony "for summoning [each] witness" and requiring defendant to pay "29 cents per mile for mileage required of an officer to perform a service . . . and to return from performing that service").

2

the complainant opened the pharmacy's safe, he laid down on the floor, while the man with the firearm "took some things from the safe" and asked the complainant for hydrocodone. Before leaving the pharmacy, the man took "some hydrocodone" and approximately $1,000 from the pharmacy's cash register.

While watching the pharmacy's surveillance videotape, admitted into evidence at trial as State's Exhibit 4, the complainant explained that the videotape shows a silver truck driving into the pharmacy's parking lot and parking close to the pharmacy. Although one person remained in the truck, three other people exited the truck and entered the pharmacy. Two of the people who got out of the truck wore "hoodies pulled over their heads," and a third man wore a black shirt and white pants. The videotape next shows the three people entering the pharmacy and the man with the black shirt and white pants standing next to the restroom. As the complainant exits the restroom, the man with the black shirt and white pants "[p]ut[s] [a] gun" to the complainant's head, and the complainant, as instructed, "look[s] down" and "g[ets] down on [his] knees." After the complainant opens the pharmacy's safe, the man with the black shirt and white pants takes from out of the safe a white object, which he then carries into the pharmacy's "prescription medication area" and leaves on the floor of the pharmacy.

Houston Police Department Officer O. Baldwin testified that while on duty on September 11, 2015, he was dispatched to investigate the aggravated robbery.

3

Upon arriving at the BZ Pharmacy, Baldwin spoke to the complainant who told him that "three black males with ski masks on came into [the] shop and pulled a gun on him and got him out of the restroom." One of the men then "took him to the [pharmacy's] safe," "made him open [it]," and "get . . . stuff out." Baldwin noted that he viewed the pharmacy's surveillance videotape, State's Exhibit 4, which shows a man wearing a black shirt and white pants holding a firearm and "grabb[ing] a [white] bag out of the [pharmacy's] safe." The man then leaves the white bag on the floor of the pharmacy. Baldwin noted that he collected the white bag, admitted into evidence at trial as State's Exhibit 7, from the floor of the pharmacy.

Laurissa Pilkington, a latent print technician for the Houston Forensic Science Center ("HFSC"), testified that she tested three items related to the case, including State's Exhibit 7, the white bag found on the pharmacy's floor. From the white bag, Pilkington recovered two latent fingerprints.

Darren Jewkes, a senior latent fingerprint examiner for HFSC, testified that he analyzed the two latent fingerprints that Pilkington had recovered from State's Exhibit 7, the white bag. He opined that the first fingerprint "corresponds to the right middle finger" of appellant, and the second fingerprint "belong[s] to the right ring finger" of appellant. In other words, the "two latent [finger]prints" recovered from the white bag "belonged to" appellant.

4

After finding appellant guilty of the offense of aggravated robbery with a deadly weapon, and finding true the allegation in an enhancement paragraph that he had previously been convicted of a felony offense, the jury assessed appellant's punishment at confinement for twenty-five years. In the judgment of conviction, the trial court ordered appellant to pay court costs, "[a]s [a]ssessed," which included a $200 charge for "Summoning Witness/Mileage."[3]

## Jurisdiction

In his first issue, appellant argues that the trial court, the 337th District Court of Harris County, Texas, lacked jurisdiction over this case because the underlying indictment was presented to the grand jury of the 230th District Court of Harris, County, Texas. The State asserts that appellant waived his complaint by not first raising this procedural matter in the trial court.

The Texas Code of Criminal Procedure sets forth the organization and duties of a grand jury. *See* TEX. CODE CRIM. PROC. ANN. arts. 19.01–20.22 (Vernon 2015 & Supp. 2016). A trial court forms, impanels, and empowers a grand jury to inquire into indictable offenses, including aggravated robbery with a deadly weapon. *See* TEX. CODE CRIM. PROC. ANN. art. 20.09 ("The grand jury shall inquire into all offenses liable to indictment of which any member may have knowledge, or of which they shall be informed by the attorney representing the State, or any other credible

---

[3]     *See id.*

5

person."); *Ex parte Edone*, 740 S.W.2d 446, 448 (Tex. Crim. App. 1987) ("Once formed and impaneled by the district judge, the grand jury shall inquire into all offenses liable to indictment" (internal quotations omitted)); *Davis v. State*, 519 S.W.3d 251, 254 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Bourque v. State*, 156 S.W.3d 675, 678 (Tex. App.—Dallas 2005, pet. ref'd).  Because a grand jury's deliberations are secret, it retains a "separate and independent nature from the court." *Ex parte Edone*, 740 S.W.2d at 448.

After hearing testimony, a grand jury then votes concerning the presentment of an indictment.[4]  *See* TEX. CODE CRIM. PROC. ANN. art. 20.19 ("After all the testimony which is accessible to the grand jury shall have been given in respect to any criminal accusation, the vote shall be taken as to the presentment of an indictment . . . ."); *Ex parte Edone*, 740 S.W.2d at 448; *Davis*, 519 S.W.3d at 254; *Bourque*, 156 S.W.3d at 678 (grand jury "hears all the testimony available before voting on whether to indict the accused").

"[I]f nine members concur in finding the bill," the State prepares the indictment and the grand jury foreman signs it and delivers it to the judge or the clerk of the court.  TEX. CODE CRIM. PROC. ANN. arts. 20.19–.21; *Bourque*, 156

---

[4]     An indictment is "a written instrument presented to a court by a grand jury charging a person with the commission of an offense."  TEX. CONST. art. V, § 12(b); *see also* TEX. CODE CRIM. PROC. ANN. art. 21.02 (Vernon 2009) (setting out requirements of indictment).

S.W.3d at 678. An indictment is considered "'presented' when it has been duly acted upon by the grand jury and received by the court." TEX. CODE CRIM. PROC. ANN. art. 12.06 (Vernon 2015); *see also Henderson v. State*, 526 S.W.3d 818, 819 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Thus, presentment occurs when an indictment is delivered to either the judge or the clerk of the court. TEX. CODE CRIM. PROC. ANN. art. 20.21; *State v. Dotson*, 224 S.W.3d 199, 204 (Tex. Crim. App. 2007).

The district clerk for each county "is *the* clerk of the court for all the district courts in that county." *Henderson*, 526 S.W.3d at 820 (quoting *Ex parte Alexander*, 861 S.W.2d 921, 922 (Tex. Crim. App. 1993), *superseded by statute on other grounds as stated in Ex parte Burgess*, 152 S.W.3d 123, 124 (Tex. Crim. App. 2004)); *Aguillon v. State*, No. 14-17-00002-CR, 2017 WL 3045797, at *1 (Tex. App.—Houston [14th Dist.] July 18, 2017, pet. ref'd) (mem. op., not designated for publication). "The fact that a signed indictment features an original file stamp of the district clerk's office is strong evidence that a returned indictment was 'presented' to the court clerk within the meaning of Article 20.21." *Dotson*, 224 S.W.3d at 204 (because indictment "bears an original file stamp, that fact convincingly shows the presentment requirement was satisfied"). Once an indictment is presented, jurisdiction vests with the trial court. TEX. CONST. art. V, § 12(b); *Dotson*, 224 S.W.3d at 204; *Cook v. State*, 902 S.W.2d 471, 476 (Tex. Crim. App. 1995).

7

All state district courts within the same county have jurisdiction over the same cases, and criminal district courts have original jurisdiction in felony criminal cases. *See* TEX. CODE CRIM. PROC. ANN. art. 4.05 (Vernon 2015); TEX. GOV'T CODE ANN. § 74.094 (Vernon 2013); *see also Aguillon*, 2017 WL 3045797, at \*2; *Henderson*, 526 S.W.3d at 820; *Davis*, 519 S.W.3d at 254. In counties having two or more district courts, the judges of the courts "may adopt rules governing the filing and numbering of cases, the assignment of cases for trial, and the distribution of the work of the courts as in their discretion they consider necessary or desirable for the orderly dispatch of the business of the courts." TEX. GOV'T CODE ANN. § 24.024 (Vernon Supp. 2016); *see also* TEX. GOV'T CODE ANN. § 74.093 (Vernon Supp. 2016) (addressing adoption of local rules of administration to provide, in part, for assignment, docketing, transfer, and hearing of all cases); *Henderson*, 526 S.W.3d at 820; *Aguillon*, 2017 WL 3045797, at \*2; *Davis*, 519 S.W.3d at 255.

Thus, in multi-court counties, such as Harris County, although a specific district court may impanel a grand jury, it does not necessarily follow that all cases considered by that court's grand jury are assigned to that court. *See Henderson*, 526 S.W.3d at 820; *Aguillon*, 2017 WL 3045797, at \*2; *Shepherd v. State*, No. 01-16-00748-CR, 2017 WL 2813165, at \*1 (Tex. App.—Houston [1st Dist.] June 29, 2017, pet. ref'd) (mem. op., not designated for publication); *Davis*, 519 S.W.3d at 255 ("If a grand jury in one district court returns an indictment in a case, the case

8

nevertheless may be then assigned to any district court within the same county."); *Hernandez v. State*, 327 S.W.3d 200, 204 (Tex. App.—San Antonio 2010, pet. ref'd); *Bourque*, 156 S.W.3d at 678; *see also Tamez v. State*, 27 S.W.3d 668, 670 n.1 (Tex. App.—Waco 2000, pet. ref'd) (noting "the judges of the Harris County district courts exercising criminal jurisdiction have adopted a procedure by which indictments are filed in each court on a rotating basis without reference to the court which empaneled the grand jury presenting the indictments"). In other words, one court may impanel a grand jury, and if an indictment is presented, the case may be filed in another court of competent jurisdiction within the same county. *See Aguillon*, 2017 WL 3045797, at \*2; *Cannon v. State*, Nos. 05-13-01109-CR, 05-13-01110-CR, 2014 WL 3056171, at \*4 (Tex. App.—Dallas July 7, 2014, no pet.) (mem. op., not designated for publication); *Thornton v. State*, Nos. 05-13-00610-CR, 05-13-00611-CR, 05-13-00612-CR, 2014 WL 2946457, at \*3 (Tex. App.—Dallas May 6, 2014, no pet.) (mem. op., not designated for publication).

The 230th and 337th District Courts are both criminal district courts in Harris County, Texas. They both share the same clerk, i.e., the Harris County District Clerk, and have original jurisdiction in felony criminal cases. On November 6, 2015, the State filed in the 337th District Court a complaint, alleging that "on or about September 11, 2015," appellant "did then and there unlawfully[,] while in the course

9

of committing theft of property owned by [the complainant], and with intent to obtain and maintain control of the property, intentionally and knowingly threaten and place [the complainant] in fear of imminent bodily injury and death," and appellant "did then and there use and exhibit a deadly weapon, namely, a firearm." (Emphasis omitted.) On December 16, 2015, the grand jury returned a true bill of indictment concerning the same conduct. *See* TEX. CONST. art. V, § 12(b); TEX. CODE CRIM. PROC. ANN. art. 21.02 (setting out requirements of indictment); *State v. Smith*, 957 S.W.2d 163, 164–65 (Tex. App.—Austin 1997, no pet.) ("The constitutional requisites for an indictment . . . are satisfied by a written instrument accusing a person of the commission of a criminal offense with enough clarity and specificity to identify the penal statute under which the State intends to prosecute . . . ."). That indictment was presented to the Harris County District Clerk, as demonstrated by the clerk's original file stamp, and filed in the 337th District Court, the trial court where the State's complaint was originally filed. *See Shepherd*, 2017 WL 2813165, at *1 ("After the grand jury votes concerning presentment of an indictment, the State can file in any court that has jurisdiction over the case.").

Here, there is further evidence in the record that the indictment was acted upon by the grand jury and presented to, or received by, the 337th District Court. *See Henderson*, 526 S.W.3d at 820. Specifically, the grand jury foreman signed the indictment, the trial court directed the State to read the indictment to appellant in

10

open court prior to trial, and it accepted appellant's plea of "not guilty." *See id.* ("Logically, [defendant]'s arraignment . . . could not have occurred in the 177th District Court if the trial court had not actually received the indictment."); *Helsley v. State*, No. 07-15-00350-CR, 2017 WL 931707, at *1 (Tex. App.—Amarillo Mar. 8, 2017, pet. ref'd) (mem. op., not designated for publication); *see also* TEX. CODE CRIM. PROC. ANN. art. 12.06 (stating presentment occurs when indictment "has been duly acted upon by the grand jury and received by the court"). Thus, the 337th District Court was properly vested with jurisdiction over appellant. *See* TEX. CODE CRIM. PROC. ANN. arts. 4.05, 4.16 (Vernon 2015); *see also Aguillon*, 2017 WL 3045797, at *2 (although amended indictment signed by foreman of grand jury impaneled by 177th District Court, 184th District Count had jurisdiction when amended indictment refiled in 184th District Court, which had "first-filed related case"); *Helsley*, 2017 WL 931707, at *2 (when "[e]vidence of 'presentment'" appears in record, "it is clear that the trial court had jurisdiction to try [defendant] for the charges encompassed by the indictment"); *Williams v. State*, No. 06-14-00224-CR, 2015 WL 4071542, at *4 (Tex. App.—Texarkana July 6, 2015, no pet.) (mem. op., not designated for publication) (although indictment presented by grand jury impaneled by 291st District Court, record shows case first filed in 282nd District Court, which obtained jurisdiction); *Paz v. State*, No. 05-14-01127-CR, 2015 WL 6386424, at *10 (Tex. App.—Dallas Oct. 22, 2015, no pet.) (mem. op.,

11

not designated for publication) ("Jurisdiction over felony cases, such as this case, lies in the district court or criminal district court where the indictment is first filed.").

Appellant argues that "[a] grand jury impaneled by one [trial] court cannot present an indictment to a different [trial] court" because "a grand jury serves [one] particular court." However, this Court has expressly rejected this argument on at least four previous occasions. *See Henderson*, 526 S.W.3d at 819–21 (rejecting argument 177th District Court of Harris County, Texas never acquired jurisdiction over defendant because grand jury from 182nd District Court of Harris County, Texas presented indictment); *Shepherd*, 2017 WL 2813165, at *1; *Hernandez v. State*, No. 01-15-00837-CR, 2017 WL 1416877, at *2 (Tex. App.—Houston [1st Dist.] Apr. 20, 2017, pet. ref'd) (mem. op., not designated for publication) (defendant argued trial court, 263rd District Court of Harris County, Texas, lacked jurisdiction because grand jury of different court, 184th District Court of Harris County, presented indictment); *Davis*, 519 S.W.3d at 254–56 (rejecting argument 184th District Court of Harris County, Texas did not acquire jurisdiction over defendant because grand jury from 178th District Court of Harris County, Texas presented indictment). And we have repeatedly held that a trial court is not deprived of jurisdiction over a criminal defendant in circumstances such as those presented in the instant case. *See, e.g.*, *Henderson*, 526 S.W.3d at 819–21; *Shepherd*, 2017 WL

2813165, at \*1; *Hernandez*, 2017 WL 1416877, at \*2; *Davis*, 519 S.W.3d at 254–56.

Further, we have previously explained that, at best, appellant's arguments present a procedural issue related to his indictment. *See Henderson*, 526 S.W.3d at 821; *Shepherd*, 2017 WL 2813165, at \*1; *Hernandez*, 2017 WL 1416877, at \*2; *Davis*, 519 S.W.3d at 254–56. And although a jurisdictional defect in an indictment may be challenged for the first time on appeal, a procedural deficiency in regard to an indictment may not. *See Cook*, 902 S.W.3d at 480; *Henderson*, 526 S.W.3d at 821; *Hernandez*, 2017 WL 1416877, at \*2; *Davis*, 519 S.W.3d at 256; *see also Mosley v. State*, 354 S.W.2d 391, 393–94 (Tex. Crim. App. 1962); *Lemasurier v. State*, 91 S.W.3d 897, 899–900 (Tex. App.—Fort Worth 2002, pet. ref'd) (holding defendant waived error regarding procedural deficiency with indictment by failing to timely file plea to jurisdiction); *Tamez*, 27 S.W.3d at 670–71 (holding defendant waived appellate complaint indictment filed in district court other than district court which impaneled grand jury because such defect "concern[ed] a procedural irregularity which [the defendant] should have raised in a pre-trial motion"). Here, appellant did not object to the indictment or the proceedings in the trial court.

Accordingly, we hold that the trial court had jurisdiction over this case and appellant's failure to object to the indictment or the proceedings in the trial court prior to trial constitutes a waiver of his right to challenge any procedural irregularity

related to his indictment on appeal. *See Henderson*, 526 S.W.3d at 819–21; *Hernandez*, 2017 WL 1416877, at *2.

We overrule appellant's first issue.

## "Summoning Witness/Mileage" Fee

In his second issue, appellant argues that the $200 "Summoning Witness/Mileage" fee[5] assessed against him, an indigent criminal defendant, by the trial court is (1) facially unconstitutional because it violates the Separation of Powers clause of the Texas Constitution and (2) unconstitutional as applied to him because it violates his constitutional rights to compulsory process and confrontation.[6] *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10 (rights to compulsory process and confrontation), TEX. CONST. art. II, § 1 (separation of powers); *see also* TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005).

We review the constitutionality of a criminal statute de novo as a question of law. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Maloney v. State*, 294

---

[5]     *See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3), (b) (imposing $5 charge on defendant convicted of felony "for summoning [each] witness" and requiring defendant to pay "29 cents per mile for mileage required of an officer to perform a service . . . and to return from performing that service").

[6]     Although the State does not challenge appellant's preservation of his second issue for appeal, we note that a defendant may challenge the imposition of mandatory court costs for the first time on direct appeal when those costs are not imposed in open court and the judgment does not contain an itemization of the imposed court costs. *See London v. State*, 490 S.W.3d 503, 506–07 (Tex. Crim. App. 2016); *see also Johnson v. State*, 423 S.W.3d 385, 390–91 (Tex. Crim. App. 2014); *Casas v. State*, 524 S.W.3d 921, 925 (Tex. App.—Fort Worth 2017, no pet.).

14

S.W.3d 613, 626 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). When presented with a challenge to the constitutionality of a statute, we presume that the statute is valid and the legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *Maloney*, 294 S.W.3d at 626. The party challenging the statute has the burden to establish its unconstitutionality. *Rodriguez*, 93 S.W.3d at 69; *Maloney*, 294 S.W.3d at 626. We must uphold the statute if we can apply a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979); *see also Maloney*, 294 S.W.3d at 626 (if statute can be interpreted in two different ways, one of which sustains its validity, we apply interpretation sustaining its validity).

"A facial challenge to a statute is the most difficult challenge to mount successfully" because it is an attack on the statute itself, rather than a particular application of it. *Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992); *Toledo v. State*, 519 S.W.3d 273, 279 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). To prevail on a facial challenge to a statute, the challenging party must establish that no set of circumstances exists under which the statute would be constitutionally valid. *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex. Crim. App. 2013); *see also Horhn v. State*, 481 S.W.3d 363, 372 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

Appellant argues that the $200 "Summoning Witness/Mileage" fee assessed against him, an indigent criminal defendant, by the trial court, violates the Separation of Powers clause of the Texas Constitution and constitutes an impermissible tax collected by the judiciary because "the funds" received for the fee are "not directed by statute to be used for a criminal justice purpose." Instead, "the funds" are "directed towards the general revenue fund of the county" "in which the convicting court is located."

> Article II, section 1, of the Texas Constitution provides:
>
> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1; *see also Meshell v. State*, 739 S.W.2d 246, 252 (Tex. Crim. App. 1987) ("[This] single, tersely phrased paragraph, provides that the constitutional division of the government into three departments (Legislative, Executive and Judicial) shall remain intact, 'except in the instances herein expressly permitted.'" (quoting TEX. CONST. art. II, § 1)). "This division ensures that [the] power granted [to] one branch may be exercised by only that branch, to the exclusion of the others." *Ex parte Lo*, 424 S.W.3d at 28; *see also Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 600 (Tex. 2001) ("The

16

separation-of-powers doctrine prohibits one branch of government from exercising a power inherently belonging to another branch."); *Meshell*, 739 S.W.2d at 252 ("[A]ny attempt by one department of government to interfere with the powers of another is null and void." (internal quotations omitted)).

The Separation of Powers clause is violated "when one branch of government assumes or is delegated a power more properly attached to another branch." *Ex parte Lo*, 424 S.W.3d at 28 (internal quotations omitted); *see also Salinas v. State*, 523 S.W.3d 103, 106–07 (Tex. Crim. App. 2017); *Hernandez v. State*, No. 01-16-000755-CR, --- S.W.3d ---, 2017 WL 3429414, at *6 (Tex. App.—Houston [1st Dist.] Aug. 10, 2017, no pet. h.). Relevant to the instant case, a court is delegated a power more properly attached to the executive branch, rather than to the judiciary, where a statute turns the court into a "tax gatherer[]"; however, the collection of fees by a court in a criminal case constitutes a judicial function where "the statute under which [the] court costs are assessed (or an interconnected statute) provides for an allocation of such court costs to be expended for [a] legitimate criminal justice purpose[]." *Salinas*, 523 S.W.3d at 107, 109 n.26 (quoting *Peraza v. State*, 467 S.W.3d 508, 517 (Tex. Crim. App. 2015)) (explaining "[t]he issue is whether the fee in question is a court cost (which is allowed) or a tax (which is unconstitutional)"); *Hernandez*, 2017 WL 3429414, at *6; *see also Casas v. State*, 524 S.W.3d 921, 925–27 (Tex. App.—Fort Worth 2017, no pet.) ("Although courts may not operate as tax

17

gatherers, which is a function reserved to the executive branch of government, courts may collect fees in criminal cases as part of its judicial function if the statute under which court costs are assessed (or an interconnected statute) provides for an allocation of such costs to be expended for legitimate criminal justice purposes." (internal quotations omitted)).

"What constitutes a legitimate criminal justice purpose is a question to be answered on a statute-by-statute/case-by-case basis." *Salinas*, 523 S.W.3d at 107; *see also Peraza*, 467 S.W.3d at 518. "And the answer to that question is determined by what [a] governing statute says about the intended use of the funds, not whether [the] funds are actually used for a criminal justice purpose." *Salinas*, 523 S.W.3d at 107, 109 n.26; *see also Casas*, 524 S.W.3d at 926. In other words, the relevant statute must direct "that the funds be used for something that is a legitimate criminal justice purpose; it is not enough that some of the funds may ultimately benefit someone who has some connection with the criminal justice system." *Salinas*, 523 S.W.3d at 109 n.26.

As the Texas Court of Criminal Appeals has noted, "[w]hen a defendant is convicted in a criminal case, various statutes require [him to] pay[] [certain] fees as court costs." *Salinas*, 523 S.W.3d at 105. Article 102.011(a)(3) and (b) require a defendant "convicted of a felony or misdemeanor" to pay fees for certain services "performed . . . by a peace officer," including "$5 for summoning [each] witness"

and "29 cents per mile for mileage required of an officer to perform [the] service . . . and to return from performing that service." Tex. Code Crim. Proc. Ann. art. 102.011(a)(3), (b) (Vernon Supp. 2016).

In *Salinas*, the court of criminal appeals recently held that Local Government Code section 133.102, which requires a person convicted of a criminal offense to pay a "Consolidated Court Cost" fee,[7] violates the Separation of Powers clause of the Texas Constitution to the extent that it allocates funds received from the fee to the "abused children's counseling" account.[8] 523 S.W.3d at 105, 109–110 & n.26 (internal quotations omitted). In doing so, the court explained that the funds received

---

[7] *See* Tex. Local Gov't Code Ann. § 133.102(a) (Vernon Supp. 2016) ("A person convicted of an offense shall pay as a court cost, in addition to all other costs: (1) $133 on conviction of a felony; (2) $83 on conviction of a Class A or B misdemeanor; or (3) $40 on conviction of a nonjailable misdemeanor offense, including a criminal violation of a municipal ordinance, other than a conviction of an offense relating to a pedestrian or the parking of a motor vehicle."); *see also Salinas v. State*, 523 S.W.3d 103, 105 (Tex. Crim. App. 2017) (under section 133.102, "the defendant pays a single fee, but the money from that fee is divided up among a variety of different state government accounts according to percentages dictated by the statute").

[8] The court also held that section 133.102 is unconstitutional to the extent that it allocates funds received from the fee to the "[c]omprehensive [r]ehabilitation" account because such funds serve "[n]o criminal justice purpose." *Salinas*, 523 S.W.3d at 107–08 (internal quotations omitted). Since *Salinas*, the court of criminal appeals has repeatedly held that the portions of the "Consolidated Court Cost" fee that allocates funds received from the fee to the "abused children's counsel" account and the "comprehensive rehabilitation" account are unconstitutional. *See Johnson v. State*, No. PD-1254-15, --- S.W.3d ---, 2017 WL 4414026, at *1 (Tex. Crim. App. Oct. 4, 2017); *Davis v. State*, No. PD-1314-15, 2017 WL 4410265, at *1 (Tex. Crim. App. Oct. 4, 2017); *Guerrero v. State*, Nos. PD-0665-15, PD-0666-15, 2017 WL 4410256, at *1 (Tex. Crim. App. Oct. 4, 2017); *Penright v. State*, --- S.W.3d ---, 2017 WL 4169069, at *1 (Tex. Crim. App. Sept. 20, 2017).

from the "Consolidated Court Cost" fee that are allocated to the "abused children's counseling" account are actually "deposited in the [State's] General Revenue Fund." *Id.* at 110 (internal quotations omitted). Accordingly, the court concluded:

> We cannot uphold the constitutionality of funding [the "abused children's counseling"] account through court costs on the basis of its name or its former use when all the funds in the account go to *general revenue*. Consequently, the allocation of funds to the "abused children's counseling" account does not currently qualify as an allocation of funds "to be expended for legitimate criminal justice purposes." To the extent that § 133.102 allocates funds to the "abused children's counseling" account, it is facially unconstitutional in violation of the Separation of Powers provision of the Texas Constitution.

*Id.* at 110 (emphasis added). Essentially, the court of criminal appeals explained that there are "limits" to the types of fees that the legislature "c[an] require the courts to collect" and "it is [simply] not enough that some of the funds [received from the "Consolidated Court Cost" fee] may ultimately benefit someone who has some connection with the criminal justice system." *Id.* at 109 n.26.

Recently, this Court, relying on the court of criminal appeals' decision in *Salinas*, addressed the issue of whether the $25 "[P]rosecutor's fee" assessed against a defendant, pursuant to Texas Code of Criminal Procedure article 102.008(a), is unconstitutional because it violates the Separation of Powers clause of the Texas Constitution. *See Hernandez*, 2017 WL 3429414, at *6–7. In doing so, we explained that article 102.008(a) requires "a defendant convicted of a misdemeanor" to pay "a fee of $25 for the trying of [his] case by the district or county attorney." *Id.* at *6

20

(quoting TEX. CODE CRIM. PROC. ANN. art. 102.008(a) (Vernon 2006)). However, "[t]he statute does not [actually] state where the [funds from the] $25 [Prosecutor's] fee [are] to be directed." *Id.*

Instead, the Office of Court Administration's website shows that "100% of the money collected" from the "[P]rosecutor's fee" remains "with the [c]ounty (or the [c]ity," which the court serves, and "is directed to the [c]ounty's (or [c]ity's) General Fund." *Id.* at *6 (quoting Office of Court Administration, *Study of the Necessity of Certain Court Costs and Fees in Texas* (Sept. 1, 2014), at 6–7 in Criminal Court Costs Section (Fee No. 13, "Prosecutor's Fee"), http://www.txcourts.gov/media/495634/SB1908-Report-FINAL.pdf (purpose of study, ordered by Senate Bill 1908, to "identif[y] each statutory law imposing a court fee or costs in a court in this state" and "[d]etermine whether each identified fee or cost is necessary to accomplish the stated statutory purpose"))[9]; *see also Salinas*, 523 S.W.3d at 110 (noting, based on Texas Comptroller's website, funds collected for "abused children's counseling" fee "deposited in the [State's] General Revenue

---

[9]  The study conduct by the Office of Court Administration identified several concerns, including the fact that "some fees and costs [ordered to be collected from criminal defendants] have no stated statutory purpose," "court fees and costs collected from [criminal defendants] are oftentimes used to fund programs outside of and unrelated to the judiciary," and "many court fees and costs are collected for a purpose but [are] not dedicated or restricted to be used exclusively for that intended purpose." *See* Office of Court Administration, *Study of the Necessity of Certain Court Costs and Fees in Texas* (Sept. 1, 2014), at 2, http://www.txcourts.gov/media/495634/SB1908-Report-FINAL.pdf.

21

Fund"). "Money in a county's [or city's] general fund can be spent for 'any proper county [or city] purpose.'" *Hernandez,* 2017 WL 3429414, at *6 (quoting Tex. Att'y Gen. Op. No. JM-530 (1986)).

Thus, relying on *Salinas*, we explained that "the constitutional infirmity" in *Hernandez* was article 102.008(a)'s "failure to *direct* the funds [received from the "[P]rosecutor's fee"] to be used in a manner that would make [the fee] a court cost (i.e., for something that is a criminal justice purpose)." *Id.* at *7 (quoting *Salinas*, 523 S.W.3d at 109 n.26). And article 102.008(a) "operates unconstitutionally every time the fee is collected, making the statute unconstitutional on its face." *Id.* (quoting *Salinas*, 523 S.W.3d at 109 n.26). Further, we noted that although "some of the money collected" from the "[P]rosecutor's fee" "may ultimately be spent on something that would be a legitimate criminal justice purpose," this "is not sufficient to create a constitutional application of the statute because the actual spending of the money is not what makes a fee a court cost." *Id.* (quoting *Salinas*, 523 S.W.3d at 109 n.26).

Accordingly, we concluded that article 102.008(a) does not direct the funds from the $25 "[P]rosecutor's fee" to be expended for a criminal justice purpose. *Id.* And we held that article 102.008(a) is unconstitutional because "it allocates funds to the . . . general fund" of the county that the court serves, thereby allowing such funds to be spent "for purposes other than legitimate criminal justice purposes in violation

22

of the [S]eparation of [P]owers [clause] of the Texas Constitution." *Id.*; *see also Salinas*, 523 S.W.3d at 109–10 ("We cannot uphold the constitutionality of funding th[e] ["abused children's counseling" account . . . when all the funds in the account go to [the State's] general revenue."); *Peraza*, 467 S.W.3d at 518 n.17 (agreeing "court costs should [generally] relate to the recoupment of judicial resources"); *Casas*, 524 S.W.3d at 925–27 (holding Code of Criminal Procedure article 102.0185 unconstitutional where "monies collected" from "emergency-services cost" allocated to general revenue fund); Tex. Att'y Gen. Op. No. JC-0158 (1999) ("Court fees that are used for general purposes are characterized as taxes, and a tax imposed on a litigant . . . violat[es] . . . the constitution."). Accordingly, we modified the trial court's judgment to delete the $25 "[P]rosecutor's fee" from the costs assessed against the defendant. *Hernandez*, 2017 WL 3429414, at *7.

Although, in the instant case, we do not address the constitutionality of the "[P]rosecutor's fee," we must determine whether the "Summoning Witness/Mileage" fee assessed against criminal defendants, including appellant, pursuant to Texas Code of Criminal Procedure article 102.011(a)(3) and (b), is facially unconstitutional because it violates the Separation of Powers clause of the Texas Constitution. *See* TEX. CONST. art. II, § 1. And the rationale utilized by this Court in *Hernandez* and by the court of criminal appeals in *Salinas* applies.

23

As we noted in *Hernandez*, although article 102.011(a)(3) and (b) require a defendant "convicted of a felony or misdemeanor" to pay fees for certain services "performed . . . by a peace officer," including "$5 for summoning [each] witness" and "29 cents per mile for mileage required of an officer to perform [the] service . . . and to return from performing that service," "[t]he statute does not [actually] state where the [funds received from the] fee [are] to be directed." *See* TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(3), (b); *Hernandez*, 2017 WL 3429414, at *6.

Instead, the Office of Court Administration's website shows that, in regard to article 102.011(a)(3) and (b), "100% of the money" collected from the "Summoning Witness/Mileage" fee, including appellant's money, remains "with the county or city which the [c]ourt serves" and is directed to that county's or city's "General Fund." *See* Office of Court Administration, *Study of the Necessity of Certain Court Costs and Fees in Texas* (Sept. 1, 2014), at 12, 51 in Criminal Court Costs Section (Fee No. 26, "Peace Officer Fee – Summoning a Witness"; Fee No. 118, "Peace Officer Fee – Mileage"), http://www.txcourts.gov/media/495634/SB19 08-Report-FINAL.pdf. Further, the Office of Court Administration's website explains that if a "peace officer" is employed by the State then "the [c]ity or [c]ounty," which the court serves, "keeps 80% of the ["Summoning Witness/Mileage"] fee," which is then "direct[ed] . . . to the [c]ounty's (or [c]ity's)

24

General Fund," while "[t]he [remaining] 20% of the money [collected from the "Summoning Witness/Mileage" fee] is sent to the State for deposit in the State's General Revenue Fund." *Id.* And because the funds received from the "Summoning Witness/Mileage" fee are "directed to the General Fund (at both the State and local level)," they "need not be spent only on law enforcement [purposes]." *Id.*; *see also Hernandez*, 2017 WL 3429414, at *6 ("Money in a county's [or city's] general fund can be spent for 'any proper county [or city] purpose.'" (quoting Tex. Att'y Gen. Op. No. JM-530 (1986))); *Casas*, 524 S.W.3d at 925–27 (article 102.0185 unconstitutional where funds collected from "emergency-services cost" allocated to general revenue fund); Tex. Att'y Gen. Op. No. JC-0158 (1999) ("Court fees that are used for general purposes are characterized as taxes, and a tax imposed on a litigant . . . violat[es] . . . the constitution.").

Thus, in this case, as in *Hernandez* and *Salinas*, "the constitutional infirmity" is article 102.011(a)(3) and (b)'s "failure to *direct* the funds [received from the "Summoning Witness/Mileage" fee] to be used in a manner that would make [them] a court cost (i.e., for something that is a criminal justice purpose)." *Hernandez*, 2017 WL 3429414, at *7 (quoting *Salinas*, 523 S.W.3d at 109 n.26); *see also Peraza*, 467 S.W.3d at 517 ("[I]f [a] statute under which court costs are assessed . . . provides for an allocation of . . . court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render

25

the courts tax gatherers in violation of the [S]eparation of [P]owers clause."); *Toomer v. State*, No. 02-16-00058-CR, 2017 WL 4413146, at *3 (Tex. App.—Fort Worth Oct. 5, 2017, no pet. h.) (mem. op.); *Casas*, 524 S.W.3d at 927 (because "[n]either the statute authorizing the collection of the emergency-services cost nor its attendant statutes direct the funds to be used for a legitimate, criminal-justice purpose; . . . it is a tax that is facially unconstitutional"); Tex. Att'y Gen. Op. No. JC-0158 (1999) ("Court fees that are used for general purposes are characterized as taxes, and a tax imposed on a litigant . . . violat[es] . . . the constitution."). And this means that article 102.011(a)(3) and (b) operate unconstitutionally every time that the "Summoning Witness/Mileage" fee is collected. *See Salinas*, 523 S.W.3d at 109 n.26; *see also Hernandez*, 2017 WL 3429414, at *7.

Further, even if "some of the money collected" from the "Summoning Witness/Mileage" fee was "ultimately [to] be spent on something that would [constitute] a legitimate criminal justice purpose," this would not be "sufficient to create a constitutional application of the statute because the actual spending of the money is not what makes a fee a court cost." *Hernandez*, 2017 WL 3429414, at *7 (quoting *Salinas*, 523 S.W.3d at 109 n.26).

We conclude, as we did in *Hernandez*, that article 102.011(a)(3) and (b) do not direct the funds received from the "Summoning Witness/Mileage" fee to be expended for a criminal justice purpose. *Id.*; *see also Salinas*, 523 S.W.3d at 109–

10; *Peraza*, 467 S.W.3d at 517 ("[I]f [a] statute under which court costs are assessed . . . provides for an allocation of . . . court costs to be expended for legitimate criminal justice purposes, then the statute allows for a constitutional application that will not render the courts tax gatherers in violation of the [S]eparation of [P]owers clause.") Accordingly, we hold that article 102.011(a)(3) and (b) are facially unconstitutional as they "allocate[] [the] funds" received from the "Summoning Witness/Mileage" fee to the general revenue fund of either the county or the State and allow such money to be spent "for purposes other than legitimate criminal justice purposes in violation of the [S]eparation of [P]owers [clause] of the Texas Constitution." *Hernandez*, 2017 WL 3429414, at *7; *see also Salinas*, 523 S.W.3d at 109–10 ("We cannot uphold the constitutionality of funding th[e] ["abused children's counseling"] account . . . when all the funds in the account go to general revenue."); *Peraza*, 467 S.W.3d at 518 n.17 (agreeing "court costs should [generally] relate to the recoupment of judicial resources"). We modify the trial court's judgment to delete the $200 "Summoning Witness/Mileage" fee from the assessed court costs. *Hernandez*, 2017 WL 3429414, at *7; *see also Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013) (holding proper remedy when trial court erroneously includes amounts as court costs is to modify judgment to delete erroneous amounts).

We sustain appellant's second issue.[10]

## Conclusion

We affirm the judgment as modified.

Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Publish. TEX. R. APP. P. 47.2(b).

---

[10] Having held that article 102.011(a)(3) and (b) are facially unconstitutional in violation of the Separation of Powers clause of the Texas Constitution, we need not address appellant's arguments that the $200 "Summoning Witness/Mileage" fee is unconstitutional as applied to him because it violates his constitutional rights to compulsory process and confrontation. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10 (rights to compulsory process and confrontation); *see also* TEX. CODE CRIM. PROC. ANN. art. 1.05 (Vernon 2005); TEX. R. APP. P. 47.1.